Argued and submitted April 30, affirmed August 28, 2002

Bob BARNS,
Joel Narva, Robert Holden, Stephanie Holden,
and Mary Alice Sidwell,
*Appellants,*

*v.*

CITY OF EUGENE,
*Respondent.*

16-99-23651; A112984

52 P3d 1094

George W. Kelly argued the cause and filed the briefs for appellants.

Jens Schmidt argued the cause for respondent. With him on the brief was Harrang Long Gary Rudnick, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Plaintiffs are five property owners in the River Road-Santa Clara area of Lane County, which is adjacent to defendant, the City of Eugene. Plaintiffs brought an action seeking a declaration that the city did not have authority to extend its sewer system into the River Road-Santa Clara area, to assess the costs of construction against their properties, or to compel them to connect to the sewer system. The trial court granted the city's summary judgment motion because plaintiffs had failed to provide timely notice under the Oregon Tort Claims Act and entered judgment in the city's favor.[1] We affirm.

The city began adopting long-term sewer plans for the River Road-Santa Clara area in the 1970s.[2] As part of those plans, the city adopted several ordinances to assess the cost of constructing the sewer system against benefitted properties. In 1991, the city adopted an ordinance that had the effect of requiring residents within local improvement districts outside city limits to connect to the sewer system and to pay for that connection. Under the ordinance, the city could allow benefitted residences a grace period to connect to the system once they received notice that it was available for connection. The ordinance gave the city the authority to bring an action to enforce the connection requirement after giving the property owners 90 days' written notice.

Plaintiffs' homes are located within the local improvement districts affected by the assessments. By virtue of the ordinances, plaintiffs had to pay to connect their homes to the sewer system.[3] In December 1999, plaintiffs brought this action, seeking a declaration: (1) that the city lacked the authority to extend the sewer lines; (2) that the city should

---

[1] The trial court granted summary judgment on several other grounds as well. However, because we find its decision under the Tort Claims Act dispositive, we limit our analysis to that issue.

[2] The facts are taken from the parties' joint statement of material facts.

[3] When plaintiffs brought this action, four of the five plaintiffs had completely paid their assessed costs. The fifth plaintiff, at the time of the summary judgment motion, was still making monthly installment payments pursuant to a financing contract that he signed with the city.

refund all assessments paid by plaintiffs; and (3) that the court should void all future assessments.[4] The city moved for summary judgment because, among other things, plaintiffs had failed to provide it with timely notice as required by the Tort Claims Act. ORS 30.275(2)(b). The trial court agreed and granted the city's motion.

On appeal, plaintiffs advance two arguments why the trial court erred. They initially argue that, under *Penland v. Redwood Sanitary Sewer Service Dist.*, 327 Or 1, 956 P2d 964 (1998), a claim for declaratory and injunctive relief is not subject to the notice requirements of the Tort Claims Act. Alternatively, they argue that, because they are seeking relief for continuing torts, their claims were timely.

■   We begin with the notice requirement. Under ORS 30.275(1), no action arising from a public body's tort can be maintained without timely tort claim notice. For the purposes of the Tort Claims Act, a tort is defined as

> "the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy."

ORS 30.260(8). The text of ORS 30.260(8) provides a complete answer to plaintiffs' argument that the Tort Claims Act does not encompass claims for equitable relief. It defines torts as including actions "for damages or *for a protective remedy.*" (Emphasis added.) Focusing on the quoted language, the court explained in *Penland* that the Tort Claims Act "permits public bodies to be sued in tort for money damages as well as to be subject to actions for injunctions[.]" *Penland*, 327 Or at 7; *see Brinkley v. Oregon Health Sciences University*, 94 Or App 531, 536, 766 P2d 1045 (1988), *rev den* 307 Or 571 (1989) (tort notice required for a reinstatement claim). Under ORS 30.275(1) and ORS 30.260(8), a plaintiff bringing a claim against a public body for either equitable or monetary relief

---

[4] Plaintiffs brought this action on behalf of all other similarly situated persons. The trial court deferred ruling on plaintiffs' request to certify a class until it had resolved the city's motion for summary judgment. Plaintiffs have not assigned error to that ruling.

must give timely tort claim notice. *Brinkley*, 94 Or App at 536.

Plaintiff argues, however, that the holding in *Penland* leads to a different result. In *Penland*, property owners brought an action against a sanitary sewer service district, seeking to enjoin the district's operation of a sewer facility. The district raised a discretionary function immunity defense to the action under ORS 30.265(3)(c). On review, the Oregon Supreme Court held that, although the act permits public bodies to be sued in tort "for monetary damages as well as to be subject to actions for injunctions," 327 Or at 7, ORS 30.265(3)(c) provides public bodies with discretionary function immunity only from claims of monetary liability, *id.* at 8. The court's holding in *Penland* does not advance plaintiffs' argument. The fact that a public body may not be able to assert a discretionary function immunity defense under ORS 30.265(3)(c) to a claim for injunctive relief does not mean that the claim is not a tort claim under ORS 30.260(8) for which no notice is required. The two concepts are statutorily and logically distinct.

■■ Plaintiffs argue alternatively that, even if the Tort Claims Act applies to their claims, they "are still paying assessments which they claim are void. It is not necessary to give a tort claim notice if the case involves a continuing tort." A claim for a continuing tort is based on the theory that "recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Davis v. Bostick*, 282 Or 667, 671-72, 580 P2d 544 (1978). When a continuing tort is involved, a notice of claim filed at any time during the continuance of the conduct or within 180 days after the conduct has ceased is timely. *Holdner v. Columbia County*, 51 Or App 605, 613, 627 P2d 4 (1981).

■ We need not decide whether plaintiffs' claims constitute continuing torts. Even if they do, the sole ground that plaintiffs identified below (and in their opening brief) for saying that there was a continuing tort was that they were still paying assessments that they claimed were void. However, four of the five plaintiffs finished paying their assessments by January 1999. Those four plaintiffs had to give the city notice within 180 days after January 1999. *See Holdner*, 51

Or App at 613. They failed to do so and are barred from bringing a tort claim against the city.[5]

The fifth plaintiff, Joel Narva, was still paying his assessment to the city on an installment basis when the motion for summary judgment was filed. Even if his claim could be considered a continuing tort and thus not time barred, Narva signed a waiver that bars his claim against the city. That waiver provides:

> "As a condition of paying the assessment in installments, I hereby expressly waive all or any irregularity or defect, jurisdictional or otherwise, in the proceedings to make the improvement and apportion and assess the cost thereof on the property described[.]"

State law provides that a property owner who has to pay an assessment for local improvements has the option of financing the costs of the assessment. *See* ORS 223.210(1). The application for installment payments signed by the property owner must include the waiver agreement set forth above. ORS 223.215(1)(a). In *Bechtell v. City of Salem*, 226 Or 1, 8-9, 358 P2d 563 (1961), the Oregon Supreme Court held "without qualification" that the waiver contained in the financing application "forms a contract between the city and the property owner and that the assessed property owner may not thereafter judicially challenge the assessment."

■ Narva argues, however, that he did not voluntarily sign the waiver, primarily because owners who did not connect to the city's sewer system would be "given 90 days notice of the City's intent to file suit for a court order compelling connection." He reasons that the prospect that the city might sue rendered his decision to apply for financing involuntary. Narva's claim lacks merit for two related reasons. First, the decision whether to connect to the sewer system is separate from the decision of how to finance that connection. The fact

---

[5] Plaintiffs advance a different theory in their reply brief as to why there is a continuing tort. They argue that there is a continuing tort because they cannot disconnect from the city's sewer system and may be subject to future assessments. Plaintiffs, however, did not raise this claim either before the trial court or in their opening brief. We accordingly decline to address it. *See Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 237 n 20, 12 P3d 507 (2000); *Miller v. Salem Merchant Patrol, Inc.*, 165 Or App 266, 272-73, 995 P2d 1206 (2000).

that the city stated that it intended to bring an action to compel owners to connect to its sewer system says little about whether Narva voluntarily signed the financing contract, which included the waiver. Second, and more importantly, plaintiff's argument proves too much. If the prospect that one party will pursue an action renders a later settlement agreement involuntary, then virtually every settlement agreement would be worthless. Having considered all of Narva's arguments, we hold that, on this record, Narva has no legitimate claim that his waiver of his rights against the city when he sought financing and signed the waiver was involuntary. The trial court correctly granted the city's summary judgment motion.

Affirmed.