Argued and submitted November 3, 2003, affirmed January 28, 2004

CLINICAL RESEARCH INSTITUTE OF
SOUTHERN OREGON, P.C.,
an Oregon corporation,
*Appellant,*

*v.*

KEMPER INSURANCE COMPANIES,
American Manufacturers Mutual Insurance Company,
an Illinois corporation,
and Lori Hagler,
*Respondents.*

02-0516-E2; A118681

84 P3d 147

Ridgway K. Foley, Jr., argued the cause for appellant. With him on the opening brief was Greene & Markley, P.C. With him on the reply brief were Bernard S. Moore and Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C.

David Simantob argued the cause for respondents Kemper Insurance Companies and American Manufacturers Mutual Insurance Company. On the brief were Benjamin M. Bloom and Hornecker, Cowling, Hassen, & Heysell, L.L.P., and Jeffrey A. Meyers and Tressler, Soderstrom, Maloney & Priess, Los Angeles.

No appearance for respondent Lori Hagler.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

596-b

**BREWER, J.**

In this declaratory judgment action, plaintiff insured appeals from summary judgment in favor of defendants insurers.[1] Plaintiff argues that the trial court erred in concluding that the business owner's policy that defendants issued to plaintiff did not provide coverage for a former employee's defamation claim against plaintiff. We review for errors of law, *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992), and affirm.

Plaintiff purchased a "Kemper Premier Business-owners Special Policy" from defendants in May 2000. The policy included separate forms providing coverage for property damage and commercial liability. Only the latter coverage is at issue here. The policy provided that defendants "will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'personal injury' * * * to which this insurance applies." It further provided that the insurance applies to " '[p]ersonal injury' caused by an offense arising out of your business * * * but only if the offense was committed in the 'coverage territory' during the policy period."

The policy defined "personal injury" as

"injury, other than 'bodily injury' or 'advertising injury,' arising solely out of one or more of the following offenses:

"* * * * *

"**d.**   Oral or written publication of material that slanders or libels a person or organization or a person's or organization's goods, products or services; or

"**e.**   Oral or written publication of material that violates a person's right of privacy."

(Boldface in original.)

---

[1] Although plaintiff also named its former employee, Lori Hagler, as a defendant in this case, Hagler did not file a brief on appeal. We therefore refer to the insurers as "defendants." Also, plaintiff's complaint named both Kemper Insurance Companies and American Manufacturers Mutual Insurance Company as defendants. Defendants made no motion before the trial court with respect to the naming of both entities, and the issue is not before us on appeal.

In July 2001, Hagler brought an action against plaintiff that included a claim for "interference with economic opportunity" based on plaintiff's conduct after Hagler's termination in January 2001. Hagler later filed an amended complaint that added several other claims but did not alter the substantive allegations of the interference with economic opportunity claim. Only the latter claim is at issue in this action. As pertinent here, Hagler alleged in that claim that she would have been hired by a prospective employer if plaintiff had not wrongfully interfered by:

"1.   * * * publishing to [the prospective employer] a false and defamatory letter * * * that [Hagler] was a former employee of [plaintiff], that [Hagler] was prohibited from having any contact with [the prospective employer's] clinical research director * * * and that [plaintiff] would file a lawsuit against [the prospective employer] if they had contact with [Hagler]. Although not stated directly, implicit in the libelous communication above described was the assertion by [plaintiff] that [the prospective employer] would be sued if, in fact, that organization hired [Hagler].

"2.   The false assertions described [in the previous paragraph] were made with the motive to prevent [plaintiff's] employees and former employees, including [Hagler], who were lawfully entitled to seek employment elsewhere from seeking and finding employment with a competing business. At all times [plaintiff] knew and [was] aware that there was no non-competition agreement in force and effect between [plaintiff] and [its] employees, including [Hagler]. [Plaintiff] knew that [its] threats to file a lawsuit against [the prospective employer], should that organization hire [Hagler] or other employees of [plaintiff's] were groundless and without merit whatsoever."

Plaintiff tendered the defense of Hagler's action to defendants. Defendants initially accepted the tender under a reservation of rights, stating that the interference claim "alleges defamation in the form of libel" and that that allegation was "likely covered under the personal injury portion of [the] policy." Defendants later withdrew their defense of the action, concluding that the interference claim was covered under the personal injury portion of the policy but that

the "Employment-Related Practices" (ERP) exclusion applied "to remove any potential for coverage[.]" Plaintiff then commenced this action, seeking a declaratory judgment to the effect that defendants owed it a duty to defend the action.

Plaintiff thereafter moved for summary judgment, and defendants filed a cross-motion for summary judgment. The trial court denied plaintiff's motion for summary judgment and granted defendants' cross-motion, based on its conclusion that plaintiff's claim was subject to the ERP exclusion in the policy.

On appeal, plaintiff assigns error to the grant of summary judgment in favor of defendants. Plaintiff asserts that the ERP exclusion applies only to prospective and current employees, not to former employees. Plaintiff asserts that, at the least, its proposed construction is reasonable, thus making the exclusion ambiguous and requiring us to construe the ambiguity in its favor. Defendants reply that the ERP exclusion is unambiguous and that it is not limited in scope to current employees. Plaintiff raises an alternative theory for the first time in its reply brief on appeal—specifically, that the defamation alleged by Hagler was not "employment-related" because plaintiff's statements did not relate to Hagler's work performance. Defendants contend that plaintiff's alternative theory is unpreserved and not properly before us. We begin our analysis with plaintiff's original theory, as framed before the trial court and in plaintiff's opening brief on appeal.

■■ Ordinarily, we evaluate a duty to defend claim by examining two documents: the complaint and the insurance policy. *American Hardware Ins. Group v. West One Auto.*, 167 Or App 244, 247, 2 P3d 413 (2000). The failure to identify or separately state claims correctly does not defeat the duty to defend. Rather, " 'in the absence of any compelling evidence of no coverage, the insurer owes a duty to defend if the injured claimant can recover under the *allegations* of the complaint upon *any* basis for which the insurer affords coverage.' " *Marleau v. Truck Insurance Exchange*, 333 Or 82, 91, 37 P3d 148 (2001) (quoting *Casey v. N. W. Security Ins. Co.*, 260 Or 485, 489, 491 P2d 208) (1971)) (emphasis in *Marleau*).

■    We interpret insurance policy provisions according to the analytical framework set out in *Hoffman Construction Co.* We first determine whether the policy defined the term at issue and, if it did not, we look to the plain meaning of the term. *American Hardware Ins. Group*, 167 Or App at 248. If we determine that there are two or more plausible interpretations of the term, then we consider whether those interpretations "withstand scrutiny, *i.e.*, continue[ ] to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman Construction Co.*, 313 Or at 470. Only if more than one interpretation remains reasonable after such an examination will we conclude that the policy provision is ambiguous. *Id.* If the provision is ambiguous, we construe it against the insurer as its drafter. *Id.* at 470-71.

■    Hagler's complaint alleged that she was not hired by a prospective employer because plaintiff sent a "false and defamatory letter" to the prospective employer stating that Hagler was prohibited from having contact with representatives of that employer.[2] The ERP exclusion provides:

"This insurance does not apply to:

"* * * * *

### "r.  Employment-Related Practices

" 'Bodily injury,' 'personal injury,' or 'advertising injury' to:

"1)    A person arising out of any:

  "a)    Refusal to employ that person;

  "b)    Termination of that person's employment; or

  "c)    Employment-related practices, policies, acts or omissions, such as *coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation,* or *discrimination* directed at that person; or

---

[2] The issue of whether those allegations are covered by the personal injury provisions of the policy is not before us. Rather, the sole question on appeal is whether the claim is subject to the ERP exclusion.

**"2)** The spouse, child, parent, brother or sister of that person as a consequence of 'bodily injury' or 'personal injury' to that person at whom any of the employment-related practices described in paragraphs a), b) or c) above is directed.

"This exclusion applies:

**"1)** Whether the insured may be liable as an employer or in any other capacity; and

**"2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury."

(Boldface in original.) This case concerns the meaning of subsection (r)(1)(c), which excludes from coverage personal injury "arising out of any * * * [e]mployment-related practices, policies, acts or omissions." The policy does not define either the phrase or its constituent terms. Accordingly, we consider the ordinary meanings of those terms. *American Hardware Ins. Group*, 167 Or App at 248.

■ The ordinary meaning of the words "arising out of" is very broad. *See Oakridge Comm. Ambulance v. U. S. Fidelity*, 278 Or 21, 25, 563 P2d 164 (1977) ("The words 'arising out of' when used in [an automobile liability provision providing coverage for damages 'arising out of the ownership, maintenance or use of the automobile'] are of broader significance than the words 'caused by,' and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle." (Internal quotation marks omitted.)) As pertinent here, "arise" can mean "to originate from a specified source," and "out of" is a "function word" to indicate either "origin or birth" or "cause or motive." *Webster's Third New Int'l Dictionary* 117, 1603 (unabridged ed 1993). Thus, like the term "related to," "arising out of" connotes a causal connection with its subject and a concomitant broadening in the scope of the subject.

■ The other key term is "employment-related." As pertinent here, "employment" means "activity in which one engages and employs his time and energies * * * as (1) : work (as customary trade, craft, service, or vocation) in which one's labor or services are paid for by an employer." *Id.* at 743.

"Related" means "having relationship : connected by reason of an established or discoverable relation." *Id.* at 1916. Plaintiff argues that, because the definition of "employment" uses the present tense and, "if anything, the definitions [of 'related'] are neutral as to tense, depending upon the word to which it is connected," "employment-related" must refer to present employment. We disagree.

Dictionaries often define in the present tense words that include past and future components, including the terms on which plaintiff relies in support of its contention—"calling" and "occupation." Both of those words are defined, in part, as activities in which a person "engages." *Id.* at 318, 1560. Further, "employment" is linked to the modifying term "related" by a hyphen. That modifier broadens its subject, "employment," to include things with which the subject has a connection or relationship. Thus, "employment-related" could include any manner, including a temporal link, by which a particular practice, policy, act or omission is connected to employment. That tentative conclusion must, however, be tested by an examination of both the particular context in which the term "employment-related" is used in the policy and the broader context of the policy as a whole. *Hoffman Construction Co.*, 313 Or at 470 (quoting *Denton v. International Health & Life*, 270 Or 444, 450, 528 P2d 546 (1974), for the proposition that "all parts and clauses [of an insurance contract] must be construed to determine if and how far one clause is modified, limited or controlled by others" (brackets added in *Hoffman Construction Co.*)).

We turn to the particular context in which the term is used. Subsection (r)(1)(c) of the ERP exclusion enumerates examples of "employment-related practices, policies, acts or omissions"—coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, and discrimination. Plaintiff urges us to apply the rule of *ejusdem generis* to construe the term "employment-related" as limited to current employment. Plaintiff contends that, because most of the listed practices ordinarily occur with respect to persons who are currently employed, "defamation" also is limited to such persons.

■■ The *ejusdem generis* rule provides that, "when general words follow an enumeration of specific persons or things, the general words are not construed in their widest extent, but are applied only to persons or things of the same general kind or class as those specifically enumerated." *McGrath v. Electrical Const. Co.*, 230 Or 295, 307, 364 P2d 604, 370 P2d 231 (1962). "Caution is warranted when applying the rule, both because of its uncertain justification and because of its malleability." *State v. Mayorga*, 186 Or App 175, 182, 62 P3d 818 (2003) (footnotes omitted). Depending on how the common characteristics of a group are defined, the rule can lead to different results. *Id.* at 182 n 4 ("The trick, of course, [with the *ejusdem generis* principle] is in describing the common quality or characteristic. In many cases, any number of possibilities [is] plausible.").

■■ In *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 313, 985 P2d 1284 (1999), the Supreme Court applied the rule to the construction of a provision in an insurance policy. The court stated that "importantly," it is "peculiarly applicable where specific enumeration precedes the word 'other' followed by general words." *Id.* (internal quotation marks omitted); *see also State v. Moore*, 174 Or App 94, 99, 25 P3d 398 (2001) (under *ejusdem generis* principle "an open-ended 'catch-all' term at the end of a list of specific items is intended to encompass only like items"). It is questionable whether the rule is applicable where, as here, a general term is *followed by* the phrase "such as" and then a list of specific items. Indeed, the phrase "such as" is indicative of a nonexclusive list of *examples*.

The principle's utility is especially doubtful where, as now explained, it is at odds with other provisions that constitute particular context for the questioned term. *See Mayorga*, 186 Or App at 182-83 (in construing a statute, *ejusdem generis* maxim does not apply "when its application would lead to redundancy or to a construction that otherwise is at odds with the legislature's apparent intentions"). The term "employment-related practice" includes acts arising out of termination of employment under subsection (r)(1)(b). It also includes, under subsection (r)(1)(a), refusal to employ a

person. The treatment of those two actions as "employment-related" practices supports the conclusion that "employment-related" is not limited to current employees.

Two other phrases in the ERP exclusion buttress that conclusion. By its terms, the exclusion applies "[w]hether the insured may be liable as an employer or *in any other capacity*[.]" (Emphasis added.) That wording appears to encompass actions in which there is no existing employment relationship, and it could include situations like this one, where an employee has been terminated and the insured then engages in conduct toward the former employee for which the insured may be legally liable. Similarly, it is significant that the ERP exclusion uses the term "person," not employee, throughout. The policy states that it does not apply to personal injury to "[a] person" arising out of employment-related practices "directed at *that person*." (Emphasis added.) The use of the word "person" rather than "employee" suggests an intention to create a broadly applicable exclusion.

The context of the policy as a whole also renders plaintiff's interpretation implausible. Plaintiff directs us to the "Employer's Liability" exclusion, arguing that it encompasses only current employment and that that fact somehow supports the limitation of the separate ERP exclusion to the present tense.[3] We disagree. In fact, that provision actually undercuts plaintiff's arguments. The "Employer's Liability" exclusion applies to

"1)   An *'employee'* of the insured *arising out of and in the course of*:

"a)   Employment by the insured; or

"b)   Performing duties related to the conduct of the insured's * * *."

---

[3] Plaintiff also relies on other policy provisions in support of its argument. For example, plaintiff directs us to the definition of "employee" in the policy, the definition of "employee" in the Employee Retirement Income Security Act (ERISA) employee dishonesty endorsement, and the use of the term "employee" in its "WHO IS INSURED" provision. Plaintiff's reliance on the definition or use of the term "employee" in various other parts of the policy is curious in light of the absence of that term in the ERP exclusion.

(Boldface in original; emphasis added.) Two features of the exclusion are helpful here. First, it uses the term "employee," which is specially defined in a definition section of the policy. As noted, the ERP exclusion refers to "person," not employee. That fact demonstrates an intention not to limit the exclusion to an existing employment relationship. Second, the "Employer's Liability" exclusion includes the phrase "in the course of." That phrase restricts the exclusion to conduct occurring during employment, a temporal limitation. The ERP exclusion does not include that phrase; its absence indicates an intentional omission that should not be ignored.

In sum, when considered in context, plaintiff's proffered interpretation of the ERP exclusion as limited to conduct occurring during employment cannot "withstand scrutiny." *Hoffman Construction Co.*, 313 Or at 470. We therefore conclude that the ERP exclusion is not ambiguous on that ground.[4] The term "employment-related" is not limited to practices, policies, acts, or omissions that are directed at current employees.

■     We turn to plaintiff's alternative theory that the allegedly defamatory statements were not employment-related because they did not involve Hagler's performance as an employee but, instead, arose in a "competition or trade

---

[4] We do not rely on cases from other jurisdictions in reaching our conclusion that the ERP exclusion applies where the practice occurred post-employment. None of those cases analyzed the exclusion in the manner that *Hoffman Construction Co.* requires, and, thus, they are of limited assistance here. *See American Hardware Ins. Group*, 167 Or App at 252 (declining to rely on Arkansas decision where it was not on point and "omitted a critical step of analysis under Oregon's methodology"). We note in passing, however, that those jurisdictions that have considered identical policy wording are in accord with the conclusion that we reach here. *See, e.g., Low v. Golden Eagle Ins. Co.*, 104 Cal App 4th 306, 307, 128 Cal Rptr 2d 423, 428 (2002) ("[T]he mere fact the alleged tort sued on arose *after* the employment relationship had ceased cannot, *per se*, serve to take the case out of the ambit of the ERP exclusion." (Emphasis in original.)); *American Alliance v. 1212 Restaurant Group*, 342 Ill App 3d 500, 509, 794 NE2d 892, 900 (2003) ("Initially, we agree with the cases [from other jurisdictions] that whether or not the defamation occurred posttermination is not sufficient to remove it from the reach of the ERP exclusion."); *Capitol Indem. Corp. v. 1405 Associates, Inc.*, 340 F3d 547, 550 (8th Cir 2003) (rejecting the insured's argument that ERP exclusion was inapplicable to conduct occurring after insured's employee terminated her employment; relying on Missouri insurance law interpreting "arising out of" to be a "very broad, general and comprehensive phrase" (internal quotation marks omitted)).

context." As noted, defendants assert that that theory is unpreserved. We agree with defendants.

In its motion for summary judgment, plaintiff argued that the ERP exclusion was ambiguous because it "could be read by a reasonable person" as not applying to claims "brought by people who are employed by the insured at the time the alleged personal injury occurs." Plaintiff reasoned that the exclusion therefore must be construed against defendants. In their response and cross-motion for summary judgment, defendants discussed an extensive body of case law from other jurisdictions, stating:

> "Even when courts have declined to apply the exclusion, they have not given credence to the argument relied upon by [plaintiff], *i.e.*, that the exclusion does not apply to claims of defamation against an insured occurring after the employee has left the employ of the insured. * * * [In a Ninth Circuit case applying California law, *HS Services, Inc. v. Nationwide Mut. Ins. Co.*, 109 F3d 642, 646 (9th Cir 1997),] the court did not apply the exclusion because it found that the purpose of the alleged defamatory remarks 'was to protect [the insured] in the marketplace' and that the remarks 'related directly to competition between [the claimant and the insured] in the marketplace and the latter's attempt to protect itself against a remark made by [the claimant], not as an ex-employee, but as a present competitor.' "

(Some brackets in original.) Plaintiff's reply memorandum on summary judgment did not cite *HS Services, Inc.*, or the principles discussed in that case. Instead, plaintiff argued that the cases on which defendants relied involved differently worded ERP exclusions and failed to follow Oregon's interpretive methodology. Plaintiff reiterated its generalized arguments that an insurer has a duty to defend if a complaint against the insured alleges any basis for which the policy provides coverage and that the ERP exclusion was ambiguous.

In its summary judgment order, the trial court addressed only plaintiff's theory that employment-related practices are, for purposes of the ERP exclusion, limited to current employees; the court quoted portions of cases cited by the parties concerning that theory, and it concluded that the exclusion was not ambiguous under Oregon law. The court

did not cite *HS Services, Inc.,* or otherwise indicate that it had considered the principles discussed in that case. Moreover, plaintiff did not refer in its opening brief on appeal to the theory that the alleged defamation was not employment-related because it did not involve Hagler's performance as an employee. Rather, only after defendants referred in their brief on appeal to cases from other jurisdictions in support of their argument that the ERP exclusion is not limited to practices directed at current employees did plaintiff rely on some of the cases cited by defendants to advance, for the first time in its reply brief, its alternative theory.

The question thus reduces to whether defendants' flagging of the theory, before the trial court and on appeal, in explaining why plaintiff's original theory must fail, was sufficient to preserve it, even though plaintiff itself advanced the theory for the first time in its reply brief on appeal. Traditionally, in order to preserve a ground for appeal, it has been deemed "essential" for a party to raise an "issue" at trial but less important to make a specific argument or identify a particular source. *State v. Stevens,* 328 Or 116, 122, 970 P2d 215 (1998); *State v. Hitz,* 307 Or 183, 766 P2d 373 (1988). "More recently—although without disavowing *Hitz*—the courts have described the rule of preservation in more functional terms. Such cases emphasize the underlying purposes of preservation, in particular, fairness and efficiency." *State v. Smith,* 184 Or App 118, 121, 55 P3d 553 (2002). As the Supreme Court explained in *State v. Wyatt,* 331 Or 335, 343, 15 P3d 22 (2000), "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."[5] *See also Ploplys v. Bryson,* 188 Or App 49, 58, 69 P3d 1257 (2003) (stating that,

---

[5] The court has been less strict in its preservation analysis where the issue involved the proper construction of a statute, *see Stull v. Hoke,* 326 Or 72, 77, 948 P2d 722 (1997) (holding that, "[i]n construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties"), or a similar error contemporaneously was being corrected by the court in another case involving the same issue of contract construction. *See Wright v. State Farm Mutual Auto. Ins. Co.,* 332 Or 1, 22 P3d 744 (2001) (construing family member/household exclusion in automobile insurance policy). However, neither of those circumstances is present here.

"[f]or an issue to be preserved for purposes of appeal, it must have been raised with sufficient clarity in the trial court to put the trial court on notice that it needs to rule on the issue and for the opposing party to have an opportunity to address the issue").

Although we could ponder, as sometimes has been done in preservation analyses based on *Hitz*, whether plaintiff's alternative theory constitutes an "issue" or an "argument," that effort would not meaningfully advance the analysis here. The decisive question, rather, is whether plaintiff provided the trial court with a sufficient explanation of the error it now asserts so that the court could grasp the theory of error and correct it, if warranted. The record reveals that both the trial court and defendant focused solely on plaintiff's theory that employment-related practices concern only current employees. Indeed, defendants mentioned the "competitive context" theory only as an example of a theory that plaintiff was *not* asserting. Plaintiff had the opportunity to raise that theory in its reply to defendants' cross-motion for summary judgment, but it failed to do so. In short, neither party sufficiently raised before the trial court the theory on which plaintiff now relies. Because the trial court was not given the opportunity to correct the alleged error based on that theory, it was not preserved.

■ Moreover, regardless of whether the alternative theory of error was preserved, plaintiff failed to raise it in its opening brief on appeal. We generally will not consider a basis as to why the trial court erred that was not assigned as error in the opening brief but was raised for the first time by way of reply brief. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-81, 823 P2d 956 (1991); ORAP 5.45(1). It is true that defendants mentioned cases addressing the competitive context theory in their respondent's brief. *See* ORAP 5.70 ("A reply brief shall be confined to matters raised in the respondent's brief * * *."). However, plaintiff's reply brief considerably expanded the scope of defendants' point. Instead of merely replying to defendants' observation that courts that had found the ERP exclusion inapplicable relied on a competitive context theory, not plaintiff's temporal theory, plaintiff actually advanced the competitive context theory, offering it

as a separate ground for limiting the phrase "employment-related practice." Under the circumstances, the theory simply comes too late. *See Barns v. City of Eugene*, 183 Or App 471, 476 n 5, 52 P3d 1094 (2002) (declining to address theory in the reply brief as to why there is a continuing tort because the plaintiffs "did not raise this claim either before the trial court or in their opening brief"); *Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 237 n 20, 12 P3d 507 (2000) (noting that the plaintiff was advancing "a different basis in its reply brief as to why the trial court erred" and that the "new argument comes too late").

Based on our conclusion that the phrase "employment-related practices" is not confined to practices directed at current employees, the trial court did not err in granting summary judgment in favor of defendants.

Affirmed.