Argued and submitted September 13, affirmed October 11, 2023, petition for review denied February 15, 2024 (372 Or 63)

THE FINAL TABLE, LLC
and Jason Thompson,
*Plaintiffs-Appellants,*

*v.*

ACCEPTANCE CASUALTY INSURANCE COMPANY,
*Defendant-Respondent,*

*and*

David GARCIA;
GDR, LLC,
dba Creative Insurance Marketing Company;
and EVERGREEN INSURANCE MANAGERS, INC.,
*Defendants.*

Multnomah County Circuit Court
20CV06497; A176545

537 P3d 990

Plaintiffs appeal a limited judgment granting defendant's motion for summary judgment. On summary judgment, the trial court ruled that defendant had neither a duty to defend its insured nor a duty to indemnify its insured. On appeal, plaintiffs contend that that ruling was error. *Held*: The Court of Appeals concluded that the trial court did not err. The court concluded that, for the purposes of both the duty to defend and the duty to indemnify, the claim against defendant fell within the exclusion from coverage for claims arising from an assault or battery.

Affirmed.

Bruce C. Hamlin, Judge pro tempore. (Limited judgment entered July 1, 2021)

Katharine von Ter Stegge, Judge. (Limited judgment entered July 21, 2021)

Brandon B. Mayfield argued the cause for appellants. Also on the briefs were Kyle A. Sturm and Nicholas A. Thede.

Jonathan Henderson argued the cause for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

This appeal arises out of plaintiffs' action to recover on a liquor liability policy that defendant issued. The trial court ruled on summary judgment that defendant did not have a duty to defend its insured because the insured failed to provide defendant with timely notice of the complaint filed against it. The court also ruled that defendant did not have a duty to indemnify its insured because the complaint came within an exclusion from coverage. The court entered a limited judgment consistent with that ruling, which plaintiffs have appealed. We affirm.

We summarize the historical facts briefly before turning to the issues that plaintiffs raise on appeal. Because the trial court granted defendant's summary judgment motion, we set out the facts in the light most favorable to plaintiffs.

This case arises out of a shooting at Puff's Pub in Gresham. One of Puff's customers (Sheets) had been drinking heavily before he arrived at Puff's around 10:00 p.m. While he was at Puff's, Sheets experienced a bout of flatulence, which caused some of the people around him to make rude gestures and another person (Thompson) to make a crude comment. Approximately five minutes after Thompson made the comment, Sheets stepped outside of Puff's briefly and came back into the pub with a gun. Sheets shot Thompson in the face. Thompson survived but experienced substantial injuries.[1] Following the shooting, Sheets pled no contest to and was convicted of attempted murder and second-degree assault.

Before arriving at Puff's, Sheets had been drinking at another bar, The Final Table. Thompson served a statutorily required notice of a liquor liability claim on Final Table, asserting that Final Table had negligently overserved Sheets and that the shooting at Puff's was a foreseeable consequence of Final Table's negligence.

---

[1] An officer viewing the surveillance video from Puff's opined that the bullet that Sheets fired at Thompson went through Thompson's cheek and ear and hit a bystander in the buttocks. Sheets fired at least one other shot, which did not hit Thompson but did hit another bystander also in the buttocks.

Final Table forwarded a copy of Thompson's claim to defendant. After reviewing that claim, defendant notified Final Table that Thompson's claim came within an exclusion to the liquor liability policy for "[a]ny claims arising out of Assault and/or Battery." As a result, defendant declined to defend or indemnify Final Table. Defendant, however, advised Final Table that it was basing its response on the information it knew at the time, and it asked Final Table to send it any new information that it received as well as any "[a]mended [c]omplaint."

Over a year later, Thompson filed and served his initial complaint on Final Table. The complaint added allegations that were not included in the statutorily required notice of claim, although it repeated the essence of that claim—that the shooting at Puff's had been a foreseeable consequence of Final Table's negligent overserving of Sheets.[2] Having received Thompson's complaint, Final Table did not notify defendant that Thompson had initiated an action against it, nor did it forward a copy of Thompson's complaint to defendant.

Final Table did not defend against Thompson's action. Approximately 40 days after Thompson served its complaint on Final Table, the trial court issued an order of default against Final Table. Three months after the order of default, Thompson put on a *prima facie* case, and the trial court entered a limited judgment in favor of Thompson and against Final Table for approximately $419,000. Defendant did not learn that Thompson had filed a complaint against Final Table until approximately six months after the judgment against Final Table became final.

Final Table and Thompson entered into a settlement agreement. As part of that agreement, Final Table assigned its claims against defendant to Thompson. Thompson and Final Table (plaintiffs) then brought this action, alleging that defendant had breached its duty to defend and indemnify Final Table. The trial court ruled on summary judgment that defendant had no duty to defend Final Table.

---

[2] As discussed below, Thompson's complaint included allegations that strengthened the inference that Sheets intended to injure Thompson when he shot him.

The court explained that the statutory claim that Final Table forwarded to defendant did not trigger the duty to defend. Only Thompson's complaint could trigger that duty. However, Final Table did not provide defendant with timely notice that Thompson had filed a complaint against it. The court then turned to the duty to indemnify. It determined that the only reasonable conclusion that could be drawn from the evidence on summary judgment was that Sheets had acted intentionally when he shot Thompson. It followed that Thompson's claim against Final Table came within the exclusion in the liquor liability policy for claims arising out of assault and battery and that defendant had no duty to indemnify Final Table.[3]

On appeal, plaintiffs argue that the trial court erred in ruling that defendant had no duty to defend or indemnify Final Table. The duty to defend is separate from the duty to indemnify, *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 349 Or 117, 150, 241 P3d 710 (2010), and we begin with the duty to indemnify. In the liquor liability policy that defendant issued to Final Table, defendant agreed to pay Final Table "those sums that the insured becomes legally obligated to pay as damages because of [injuries for which the insured is liable] by reason of the selling, serving or furnishing of any alcoholic beverage." The policy also contained an exclusion from coverage, which is at issue here. That exclusion provided that "[t]his insurance does not apply to *** [a]ny claims arising out of Assault and/or Battery." Additionally, the exclusion provided that the policy did not apply to any act or omission taken "in connection with such acts," nor did it apply to claims of negligent hiring, training, and the like "arising from any of the foregoing."

On appeal, plaintiffs raise essentially three issues regarding the duty to indemnify. They argue that the terms "assault" and "battery" in the exclusion require proof of specific intent, that a reasonable juror could find on this record

---

[3] The trial court did not rule against plaintiffs because no reasonable juror could infer that Sheets' actions at Puff's were a foreseeable consequence of Final Table's negligent overservice. *Cf. Chapman v. Mayfield*, 358 Or 196, 361 P3d 566 (2015) (discussing that issue). Similarly, we assume without deciding that Sheets' actions at Puff's were a reasonably foreseeable consequence of Final Table's overservice.

that Sheets was too intoxicated to form that intent, and that, in any event, the exclusion does not apply to claims that originate from negligent overservice. We address those issues in that order.

The parties disagree whether the terms "assault" and "battery," as used in the liquor liability policy, require proof of specific intent. In support of their respective positions, defendant relies on what it describes as a national consensus regarding those terms while plaintiffs rely on the way that the Oregon Supreme Court defined the common law torts of assault and battery in *Cook v. Kinzua Pine Mills Co.*, 207 Or 34, 293 P2d 717 (1956).[4] Even if we assume that defendant reasonably looks to a national consensus to determine what the terms "assault" and "battery" mean, plaintiffs' reliance on *Cook* reflects, at a minimum, an equally reasonable way of determining what those terms mean in an insurance policy issued to an Oregon business.

The policy does not define the terms "assault" and "battery," nor does it provide any context that favors one interpretation over the other. It follows that, under *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992), we construe the terms "assault" and "battery" against the drafter and follow *Cook*'s definition of those terms. Specifically, *Cook* explained:

> "We must distinguish between an intent to do an act which may be willful and wanton and which may result in contact, on the one hand, and an act involving an intent to cause harmful or offensive contact with the person, on the other. An assault and battery involves more than an intentional act. There must be an intent to injure. However, the authorities plainly indicate that the word 'injure' refers to a legal injury, a violation of a protected right. It does not necessarily mean bodily or physical injury."

207 Or at 48.

With that definition in mind, we turn to the facts on summary judgment. In his complaint against Final Table, Thompson alleged and Final Table admitted when

---

[4] Defendant does not dispute that the court's opinion in *Cook* provides the controlling Oregon definition of those common law terms.

it defaulted[5] that, before Sheets arrived at Final Table, he had "consumed a fifth of whiskey" and that Final Table served alcoholic drinks to Sheets even though he was "visibly intoxicated." Thompson's complaint also alleged that Sheets briefly left Puff's and reentered with a handgun. According to the complaint, Sheets "placed one hand behind [Thompson's] head [and] then with the other hand placed the handgun to the right side of [Thompson's] head and shot him through the side of the head." Additionally, evidence from surveillance videos at Puff's shows that, after Sheets shot Thompson in the head, he walked after Thompson pointing the gun at him as Thompson tried to crawl away. Put differently, the surveillance video is consistent with the deliberate way in which Thompson's complaint alleged that Sheets shot Thompson.

After the shooting, the state charged Sheets with multiple counts of attempted murder and assault. Sheets pled no contest to one count of attempted murder and one count of second-degree assault. He was convicted of those charges and is serving a 13-year sentence for his crimes.[6]

Plaintiffs argue that the question whether Sheets' acts constituted an assault or battery, as *Cook* defined those terms, turns on whether Sheets was too intoxicated to form "an intent to cause harmful or offensive contact." *See Cook*, 207 Or at 48 (defining the intent necessary to prove assault and battery). Plaintiffs reason that the record permits a reasonable trier of fact to find that Sheets either had or did not have the requisite intent, with the result that the trial court erred in granting summary judgment in defendant's favor on its duty to indemnify Final Table. Ordinarily, plaintiffs' argument might have some force. After all, Thompson's complaint alleged and Final Table admitted when it defaulted that Sheets drank a fifth of whiskey before he arrived at Final Table; that Final Table continued to serve Sheets

---

[5] Defendant does not dispute that Final Table admitted the allegations in Thompson's complaint when it defaulted and that those admitted allegations count as a fact on summary judgment in support of plaintiffs' claim that defendant breached its duty to indemnify.

[6] The record does not suggest, and plaintiffs have not argued, that the conviction for attempted murder arose out of the injuries that the two bystanders sustained.

alcohol even though Sheets was visibly intoxicated; and that Sheets left Final Table, went to Puff's, and shot Thompson.

Three considerations, however, lead us to conclude that, on this record, a trier of fact reasonably could reach only one conclusion: Sheets intended to cause a harmful or offensive contact when he shot Thompson.

As an initial matter, it is difficult to see how any sentient person could grab and then deliberately shoot another person in the head, as the complaint alleges Sheets did, without having an "intent to cause harmful or offensive contact." *See id.* Some volitional acts permit no other reasonable inference. This is one of them. *Cf. Rose v. Clark*, 478 US 570, 580-81, 106 S Ct 3101, 92 L Ed 2d 460 (1986) (explaining that an instructional error regarding intent can be harmless because "[i]n many cases, the predicate facts conclusively establish intent, so that no rational jury [in a criminal case] could find that the defendant intended to cause the act but did not *intend* to cause the injury" (emphasis in original)). Here, we conclude that no reasonable juror could conclude that Sheets did not intend to shoot Thompson in the head, nor could a reasonable juror find that, having that intent, Sheets did not intend to cause harmful or offensive contact when he pulled the trigger and shot Thompson.

Beyond that, the complaint alleged (and the record shows) that Sheets was convicted of attempted murder, which required a finding beyond a reasonable doubt that Sheets intended to kill Thompson when he grabbed Thompson's head with one hand, held the gun to Thompson's head with the other hand, and pulled the trigger. *See Kinkel v. Pearson*, 363 Or 1, 10, 417 P3d 401 (2018) (discussing what a conviction for attempted murder establishes). Although Sheets' conviction for attempted murder does not have preclusive effect in plaintiffs' action against defendant, *cf. State Farm Fire & Cas. v. Reuter*, 299 Or 155, 700 P2d 236 (1985),[7] the trial

_____

[7] In *Reuter*, the court held that the victim of an assault was precluded from recovering on the assailant's insurance policy. The court reasoned that the assailant's criminal conviction precluded him from proving that he had acted unintentionally. Moreover, because the victim's claim against the insurer was derivative of the assailant's claim, she was in privity with the assailant and was also precluded from proving that the assailant had acted unintentionally. *See* 299 Or at 163-67; *accord State Farm and Casualty Co. v. Parker*, 167 Or App 413,

court's finding in the criminal case that Sheets intended to kill Thompson is direct evidence that Sheets intended, at a minimum, to cause a "harmful or offensive contact" when he shot Thompson in the head.

Finally, after Thompson fell to the floor and tried to crawl away, Sheets walked slowly after him pointing the gun at him, until an acquaintance took the gun away. Given Sheets' criminal convictions and the deliberate way in which he shot Thompson in the head, we agree with the trial court that no reasonable juror could find that Sheets lacked an intent "to cause harmful or offensive contact." It follows that Sheets' act of shooting Thompson constituted an assault and battery, as *Cook* defined those terms, and came within the exclusion from coverage.

Plaintiffs advance an alternative argument. Citing *Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 601, 84 P3d 147 (2004), they argue that the policy exclusion for "[a]ny claims arising out of" assault and battery applies only to claims that "originate from" an assault or battery. That is, they read the phrase "arising out of" narrowly as applying only to claims that find their origin in or begin with an assault or battery. In plaintiffs' view, Thompson's claim against Final Table originated from Final Table's overservice of Sheets; it did not originate from or begin with Sheets' assault and battery on Thompson. It follows, plaintiffs conclude, that, even if Sheets' acts constituted an assault and battery within the meaning of the policy, Thompson's claim against Final Table did not arise out of Sheets shooting Thompson, and the exclusion does not apply.

Plaintiffs' interpretation of the phrase "arising out of" is difficult to square with our cases. We explained in *Clinical Research Institute* that the ordinary meaning of the words "arising out of" is "very broad." 191 Or App at 601. And we quoted *Oakridge Comm. Ambulance v. U. S. Fidelity*, 278 Or 21, 25, 563 P2d 164 (1977), for the proposition that, when used in an automobile liability provision for coverage

---

416, 1 P3d 498 (2000). In this case, Final Table was the insured. It was not the assailant and was not in privity with Sheets. As a result, issue preclusion does not apply.

for damages arising out of the ownership, maintenance, or use of an automobile, "'[t]he words "arising out of" * * * are of broader significance than the words "caused by," and are ordinarily understood to mean originating from, incident to, or having connection with the use of a vehicle.'" *Clinical Research Institute*, 191 Or App at 601 (quoting *Oakridge Comm. Ambulance*). Plaintiffs focus on one synonym for the phrase "arising out of" that the court identified in *Oakridge* but overlook the other two synonyms that the court identified, both of which undercut their argument.

To be sure, we observed in *Clinical Research Institute* that the meaning of the phrase "arising out of" can vary with the context in which that phrase is used. *Id.* In our view, however, the context cuts against plaintiffs' interpretation of that phrase. Specifically, defendant's liquor liability policy covers only "those sums that the insured becomes legally obligated to pay as damages because of [injuries for which the insured is liable] by reason of the selling, serving or furnishing of any alcoholic beverage." If, as plaintiffs argue, the exclusion for "[a]ny claims arising out of Assault and/or Battery" does not apply to claims for assault and battery that are a foreseeable consequence of negligently overserving alcohol, then the exclusion becomes a null set. It excludes claims for injuries for which the policy provides no coverage. After all, the policy does not provide coverage for assaults and batteries that are unrelated to selling, serving, or providing alcohol.

Viewing the exclusion in context, we conclude that Thompson's claim against Final Table (and Final Table's claim for indemnification under the policy) arose out of Sheets' assault and battery on Thompson. As a result, Thompson's claim was excluded from coverage.[8] The trial

---

[8] Plaintiffs offer one contrary contextual argument. They note that the second paragraph in the exclusion uses the phrase "in connection with" and the third paragraph uses the phrase "arising from" rather than "arising out of." They infer from the use of those different connecting phrases that "arising out of" in the first paragraph in the exclusion refers only to claims that originate from an assault or battery. The second and third paragraphs, however, exclude claims for incidental acts, such as the failure to prevent an assault or battery or the failure to train or supervise that can occur in connection with or that may arise from negligent overservice but are not the foreseeable consequence of negligent overservice, as an assault or battery may be. The context that plaintiffs identify does not persuade us that the first paragraph in the exclusion applies narrowly.

court correctly ruled on summary judgment that defendant had no duty to indemnify Final Table.[9]

We turn to plaintiffs' argument that defendant had a duty to defend Final Table against Thompson's claim. We note, as an initial matter, that there is a substantial question whether Final Table incurred any damages as a result of defendant's alleged breach of the duty to defend. Plaintiffs' complaint against defendant does not allege any acts that Final Table took to defend against Thompson's complaint, nor does it allege that Final Table incurred any costs as a result of defending against that complaint.[10] Moreover, plaintiffs have not alleged that Thompson would have recovered fewer damages from Final Table if defendant had provided Final Table with a defense. Defendant, how-ever, never moved to dismiss or strike plaintiffs' claim that it had breached its duty to defend for the failure to allege any damages, and we cannot say that plaintiffs could not have alleged any damages if defendant had raised the issue. We accordingly turn to the merits of plaintiffs' claim that defendant breached its duty to defend Final Table.

As noted above, Final Table timely sent defen-dant a copy of the statutorily required notice of claim that Thompson served on Final Table. Final Table, however, did not give defendant timely notice that, approximately a year later, Thompson initiated an action against Final Table by filing and serving a complaint for damages arising out of the shooting at Puff's Pub. Indeed, Final Table did not notify defendant that Thompson had initiated an action against Final Table until approximately six months after the trial court entered a final judgment in that action for

---

[9] Plaintiffs also advance a common law variation of their insurance policy argument. Relying on *Gowans v. N. W. Pac. Indem. Co.*, 260 Or 618, 489 P2d 947 (1971), they contend that the "proximate cause" of Thompson's claim against Final Table was Final Table's overservice of Sheets, not Sheets' assault and battery. It follows, they conclude, that Thompson's claim was not subject to the assault and battery exclusion. The court explained, however, in *Gowans* that the policy did not exclude the foreseeable loss in that case. *Id.* at 620. Here, it does.

[10] Plaintiffs' complaint against defendant alleged that Final Table incurred damages in the amount of the default judgment entered against it and that Thompson has incurred damages for his attempts to recover the default judg-ment from Final Table. However, neither allegation identifies any damages that Final Table incurred in defending against Thompson's complaint.

approximately $419,000 in favor of Thompson and against Final Table.

At first blush, one might wonder how defendant could have breached its duty to defend Final Table in an action that Final Table never mentioned to defendant until long after that action had been reduced to a judgment. Plaintiffs argue, however, that the statutorily required claim that they sent to defendant approximately a year before Thompson sued Final Table sufficed, either because that claim was sufficient to trigger the duty to defend under the policy or because it was substantially the same as the complaint that Thompson filed a year later. Alternatively, plaintiffs contend that, even if Final Table breached its duty under the policy to provide timely notice to defendant of any complaint filed against it, defendant was not prejudiced by Final Table's breach. *See Lusch v. Aetna Cas. & Surety Co.*, 272 Or 593, 538 P2d 902 (1975); *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 156 P3d 105 (2007); *Halsey v. Fireman's Fund Ins. Co.*, 68 Or App 349, 681 P2d 168 (1984). They argue that, even if defendant had received timely notice of Thompson's complaint, defendant still would have determined that, based on the complaint, it had no duty to defend Final Table.[11]

Plaintiffs' first argument conflates two related but separate provisions in the insurance policy. The policy required Final Table to promptly notify defendant of any "claim" or "suit" against it. It also provided, in a separate section, that defendant had a duty to defend against any "suit" that came within the policy's coverage. Under the policy's terms, defendant's duty to defend arose only in response to a "suit," and plaintiffs have cited no authority for the proposition that the statutorily required claim that Final Table forwarded to defendant constituted a "suit," as the

---

[11] Plaintiffs advance one other reason to excuse Final Table's failure to notify defendant that Thompson had initiated an action against it. They argue that defendant's response to the statutory claim that Final Table forwarded to defendant constituted an anticipatory breach, which relieved Final Table of any obligation under the policy to forward Thompson's complaint to defendant. However, defendant's response to the statutory claim was not its final word on the issue. Rather, defendant's response asked Final Table to let it know if the facts or pleadings changed, which could cause defendant to reevaluate its decision that it had no duty to defend or indemnify.

policy used that term. The claim that Final Table forwarded to defendant did not trigger the duty to defend.

Plaintiffs' argument that defendant was not prejudiced by Final Table's default presents a closer issue. In its briefing, defendant has not responded to that argument; that is, it has not disputed that, under established Oregon precedent, Final Table's failure to give defendant timely notice of Thompson's complaint was not fatal because defendant was not prejudiced by that failure. Indeed, defendant argues on appeal that, even if it had received timely notice of Thompson's complaint, it still would have determined, based on the allegations in Thompson's complaint, that it had no duty to defend Final Table. Given that response, we conclude that that Final Table's lapse did not prejudice defendant and accordingly turn to the question whether the allegations in Thompson's complaint came within the terms of the liquor liability policy that defendant issued. *See Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994) (explaining that the duty to defend is determined by comparing the allegations in the complaint to the terms in the policy).[12]

On that issue, the allegations in Thompson's complaint do not differ in any meaningful way from the evidence introduced on summary judgment, which we discussed above in deciding whether defendant had breached its duty to indemnify Final Table. Thompson's complaint alleges, as noted above, that Sheets had drunk a fifth of whisky before he went to Final Table and that Final Table served Sheets even though he was visibly impaired. It alleges that Sheets then went to Puff's Pub where he "smelled like he may have defecated on himself." According to the complaint, Sheets left Puff's briefly and returned with a gun; Sheets then "placed one hand behind [Thompson's] head [and] then with the other hand placed the handgun to the right side of [Thompson's] head and shot him through the side of the head." Finally, the complaint alleges that, after the

---

[12] The trial court did not decide defendant's duty to defend on this ground, although defendant raised the issue in support of its motion for summary judgment. Moreover, because there is no factual dispute regarding the complaint or the policy, there is no procedural bar to our considering whether the trial court was "right for the wrong reason."

shooting, Sheets was convicted of attempted murder and second-degree assault.

The allegations in the complaint differ in minor respects from the evidence set out above regarding the duty to indemnify. The complaint omits any allegation that Sheets suffered from flatulence at Puff's, that other people in the bar made rude gestures in response to Sheets' condition, or that Thompson made a crude comment. It does, however, include a description of how Sheets smelled at Puff's, and it sets out how, after he reentered Puff's with a gun, Sheets took Thompson's head in one hand, placed the gun against his head with the other hand, and pulled the trigger. It also alleges that Sheets was convicted of attempted murder and assault.[13]

Although the two sets of facts are not identical, the differences are not material. Most notably, the complaint sets out the deliberate way in which Sheets held Thompson's head while he put the gun against it and pulled the trigger, and it includes the fact that he was convicted of attempted murder. For the reasons explained above, no reasonable trier of fact could infer from those allegations that Sheets lacked an "intent to cause harmful or offensive contact" when he shot Thompson in the head. *See Cook*, 207 Or at 48. Even if Final Table's failure to provide defendant with timely notice of Thompson's complaint did not prejudice defendant, the allegations in Thompson's complaint brought his claim against Final Table within the exclusion from coverage for claims arising from an assault and battery. For that reason, the trial court correctly granted defendant's motion for summary judgment on the duty to defend.

Affirmed.

---

[13] The complaint omits an allegation that the bullets from Sheets' gun hit two bystanders. For all that appears from the complaint, the only person whom Sheets injured was Thompson, which leads to the inescapable inference that Sheets' criminal convictions resulted from the injuries that Thompson sustained.