Argued and submitted September 30, 1991, reversed and remanded to enter
judgment in favor of General Insurance Company February 12, reconsideration
denied May 6, petition for review denied August 25, 1992 (314 Or 175)

DELTA SAND & GRAVEL CO.,
and Babb Construction Co.,
*Respondents,*

*v.*

GENERAL INSURANCE COMPANY
OF AMERICA,
*Appellant,*

*and*

INDUSTRIAL INDEMNITY COMPANY,
*Defendant.*

(16-89-04595; CA A65074)

826 P2d 82

Carrell F. Bradley, Hillsboro, argued the cause for appellant. On the briefs were Larry A. Brisbee and Schwenn, Bradley, Batchelor, Brisbee and Stockton, Hillsboro.

William Turnbow, Eugene, argued the cause for respondents. With him on the brief was Hershner, Hunter, Moulton, Andrews & Neill, Eugene.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Plaintiffs, Delta Sand and Gravel Co. (Delta) and Babb Construction Co. (Babb), brought this action against defendant insurer to recover their defense and settlement costs incurred in a tort action that defendant refused to defend on plaintiffs' behalf.[1] The trial court granted plaintiffs' motion for partial summary judgment on the issues of coverage, defendant's affirmative defenses and defendant's duty to pay the reasonable expenses incurred by plaintiffs in defending and settling the underlying claim. The court denied defendant's cross-motion for summary judgment. After trial on the issues of reasonableness and amount of plaintiffs' defense expenses, the court entered final judgment. Defendant appeals, and we reverse and remand.

Defendant provided plaintiffs comprehensive general liability insurance coverage. The policy provided that defendant would "pay all sums which the *insured* shall become legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *occurrence*." (Emphasis in original.) An occurrence is defined as "an event * * * which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*[.]" (Emphasis in original.) However, bodily injury to "any employee of the *insured* arising out of and in the course of his employment by the *insured*" is excluded from coverage. (Emphasis in original.) The policy included an extended liability endorsement that provided coverage for personal injury arising from "one or more of the following offenses * * * [l]ibel, slander, expression of other defamatory or disparaging material[.]"

On October 31, 1986, Alan Babb, an officer and director of Delta and Babb, discharged Childs, an employee of both plaintiffs. Childs brought an action against Delta, Babb and Alan Babb, stating claims for assault and intentional infliction of emotional distress.[2] Defendant refused to defend

---

[1] Plaintiffs sued defendant and another insurer, Industrial Indemnity Company. The claims and counterclaims between plaintiffs and Industrial Indemnity Company were dismissed without prejudice in the final judgment.

[2] The pertinent portions of the complaint alleged:

plaintiffs. Plaintiffs subsequently settled the claim with Childs and then brought this action against defendant.

■     Defendant assigns error to the granting of plaintiffs' motion for partial summary judgment and to the denial of its own motion for summary judgment. The duty to defend arises whenever the allegations of a complaint filed against the insured show that there is a possibility that the policy provides coverage for the claim made. *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969).

■     Defendant argues that the comprehensive general liability provisions exclude coverage for bodily injury arising out of and in the course of employment. Childs alleged in his complaint that he was an employee of both plaintiffs and, at the times relevant to the acts alleged in the complaint, was acting within the scope and course of his employment. Those

---

"3.

"That at all times herein mentioned, defendant, Alan Babb, (hereinafter referred to as '[Alan] Babb') was the Chief Executive Officer and a principal stockholder in defendants, Delta and [Babb] and plaintiff's supervisor and manager of the business operations.

"4.

"That at all times herein mentioned, plaintiff was, and has been an employee of defendants, Delta and [Babb], since 1969 through October 31, 1986, and at all times herein mentioned was acting within the scope and course of said employment.

"5.

"That on or about the 31st day of October, 1986, the defendant, [Alan] Babb, while in the scope and authority as Manager and Chief Executive Officer of defendant, Delta, willfully and without provocation directed the following conduct towards the plaintiff:

"A. Accused plaintiff of lying to him;

"B. Said to plaintiff, 'I'm through with you fucking me around';

"C. Doubled his fist in a manner indicating an intent to strike plaintiff;

"D. Screamed at the plaintiff, 'Gather up your personal belongings, turn in your keys and get the fuck out of here.'

"That at the time the defendants knew plaintiff was in ill health and had been under doctor's orders to reduce the amount of time dedicated to his employment, the stress level of his employment, and was suffering from coronary artery disease for which medication was required. Defendants were further aware of plaintiff's desire and need to maintain continued employment. Notwithstanding this knowledge, the defendants intentionally and maliciously, and without just cause, and with the deliberate intention of causing plaintiff to be put in fear and suffer severe stress, or with knowledge of plaintiff's health conditions that severe distress would result, directed the aforesaid conduct toward the plaintiff."

allegations are not ambiguous and clearly fall within the exclusion. Accordingly, we find that defendant had no duty to defend under the bodily injury provisions of the comprehensive general liability policy.

■ Nevertheless, plaintiffs argue that a duty to defend arose under the personal injury provisions of the extended liability endorsement, to which the exclusion for claims arising out of and in the course of employment does not apply, because the Childs complaint alleged personal injury caused by the "expression of other * * * disparaging material." Defendant contends that the provision applies only to defamatory torts and that the complaint did not allege publication or falsity. Plaintiffs counter that the language is ambiguous as a matter of law and, therefore, must be construed against defendant. They direct our attention to *Cape May v. St. Paul Fire and Marine*, 216 NJ Super 697, 524 A2d 882 (App Div 1987), in which the court considered similar policy language and concluded that it could not be construed to limit coverage to conventional common-law defamation claims. The court reasoned:

> "The insuring agreement promised more. In it, St. Paul promised to defend and pay all claims 'arising out of * * * the publication or utterance of a libel or slander or *other defamatory or disparaging material*, or a publication or utterance in violation of an individual's right of privacy; * * *[.]' If the insurer intended to cover *only* libel, slander, and invasion of privacy, it should have stopped there; the words 'other defamatory or disparaging material' must be given some content. We cannot deem them meaningless surplusage, even under the principle of *ejusdem generis* urged as controlling by St. Paul." 216 NJ Super at 703. (Citations omitted; emphasis in original.)

The court found that the substance of the malicious interference with economic relations claim was based on the "utterance of * * * other defamatory or disparaging material" and, therefore, that the insurer had a duty to defend. 216 NJ Super at 704.

That does not help plaintiffs. Although the phrase must be construed to cover communication torts other than libel and slander, it would be unreasonable to construe it to extend coverage to an intentional infliction of emotional

distress claim when the complaint does not allege that the remarks were false or that they were communicated to third persons. Certainly, intentional infliction of emotional distress might be accomplished by the expression of defamatory or disparaging words, but the complaint does not make that allegation.

■ ■ Defendant next assigns error to the trial court's ruling that defendant had a duty to pay the settlement by plaintiffs with Childs. The duty to pay is independent of the duty to defend and, even if the allegations of the complaint do not show an insured claim, the duty to pay can arise if the evidence at trial shows that judgment was in fact entered on a covered injury. *See Heider v. Commercial Ins. Co.*, 248 Or 564, 566, 436 P2d 268 (1968); *Mutual of Enumclaw Ins. Co. v. Gass*, 100 Or App 424, 428, 786 P2d 749, *rev den* 310 Or 70 (1990). Here, the case was settled before judgment. However, defendant submitted excerpts from the depositions of Alan Babb and Childs in support of its motion for summary judgment. The excerpts show that the settlement could not have been based on a covered injury. Childs, as an employee of Babb, had been performing work for Delta. It was that work that led to the incident alleged in the complaint. The injuries alleged arose out of and in the course of Childs' employment and, therefore, were excluded from coverage.

This court may order entry of summary judgment for an appellant, when cross-motions have been filed, the denial of appellant's motion has been assigned as error and appellant is entitled to judgment as a matter of law. *Cochran v. Connell*, 53 Or App 933, 940, 632 P2d 1385, *rev den* 292 Or 109 (1981).

Reversed and remanded with instructions to enter judgment in favor of General Insurance Company.