**NORTHWEST PIPE COMPANY, Plaintiff,**

v.

**RLI INSURANCE COMPANY and Employers Insurance of Wausau, Defendants.**

No. 09–CV–1126–PK.

United States District Court, D. Oregon, Portland Division.

Aug. 12, 2010.

Michael B. Merchant, Black Helterline, LLP, Portland, OR, for Plaintiff.

Bruce C. Hamlin, Timothy J. Fransen, Martin, Bischoff, Templeton, Langslet & Hoffman LLP, Portland, OR, Christopher W. Tompkins, Betts Patterson & Mines PS, Seattle, WA, for Defendant RLI Insurance Company.

William G. Earle, Hanne Eastwood, Davis Rothwell Earle & Xochihua, PC, Portland, OR, Bryan M. Barber, Barber Law Group, San Francisco, CA, for Defendant Employers Insurance of Wausau.

## ORDER

BROWN, District Judge.

Magistrate Judge Paul Papak issued Findings and Recommendation (# 54) on April 27, 2010, in which he recommends the Court grant the Motion (# 23) for Partial Summary Judgment of Defendant Employers Insurance of Wausau, grant the Motion (# 28) for Summary Judgment of Defendant RLI Insurance Company, deny the Motion (# 32) for Summary Judgment (Phase I—Duty to Defend) of Plaintiff Northwest Pipe Company, dismiss Plaintiff's claims against RLI and Wausau, and declare Wausau does not have a duty to defend or to indemnify NW Pipe under the 1985–86 insurance policy. Plaintiff filed timely objections to the Findings and Recommendation. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

### Portions of the Findings and Recommendation to which Plaintiff does not object.

Plaintiff does not object to those portions of the Findings and Recommendation in which the Magistrate Judge recommends this Court grant Wausau's Motion for Partial Summary Judgment, deny the portion of Plaintiff's Motion for Partial Summary Judgment as to Wausau's duty to defend, dismiss Plaintiff's claims against Wausau, and declare Wausau does not have a duty to defend or to indemnify NW Pipe under the 1985–86 insurance policy.

Because Plaintiff does not object to these portions of the Magistrate Judge's Findings and Recommendation, this Court is relieved of its obligation to review the record *de novo.* *See Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983)(rev'd on other grounds). *See also Lorin Corp. v. Goto & Co.,* 700 F.2d 1202, 1206 (8th Cir.1983). Having

reviewed the legal principles *de novo*, the Court does not find any error.

Accordingly, the Court adopts these portions of the Magistrate Judge's Findings and Recommendation.

### Portions of the Findings and Recommendation to which Plaintiff does object.

Plaintiff objects to those portions of the Findings and Recommendation in which the Magistrate Judge recommends the Court grant RLI's Motion for Summary Judgment as to RLI's duty to defend, deny Plaintiff's Motion for Summary Judgment as to RLI's duty to defend, and dismiss Plaintiff's claims against RLI.

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1). *See also United States v. Bernhardt,* 840 F.2d 1441, 1444 (9th Cir.1988); *McDonnell Douglas Corp. v. Commodore Business Mach., Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

### I. Policy Language

RLI's insurance policy issued to Plaintiff provides in pertinent part:

#### I. COVERAGE

The Company hereby agrees ... to indemnify [Plaintiff] ...

for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of:

 (i) Personal injuries, including death at any time resulting therefrom,

 (ii) Property Damage,

 (iii) Advertising liability,

caused by or arising out of each occurrence.

\* \* \*

### II. LIMIT OF LIABILITY

The Company shall only be liable for the ultimate net loss the excess of ...

(a) the limits of the underlying insurance as set out in the schedule in respect of each occurrence covered by said underlying insurances.

\* \* \*

### III. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS

With respect to any occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurances hereof or any other underlying insurance collectible by [Plaintiff], but covered by the terms and conditions of this policy ... [RLI] shall

(a) defend any suit against [Plaintiff] alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent.

\* \* \*

### 6. ULTIMATE NET LOSS

The term "Ultimate Net Loss" shall mean the total sum which [Plaintiff] ... become[s] obligated to pay by reason of ... property damage ... and shall also include ... expenses for ... litigation ... of claims and suits which are paid as a consequence of any occurrence covered hereunder.

\* \* \*

### L. OTHER INSURANCE

If other valid and collectible insurance with any other insurer is available to [Plaintiff] covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in

excess of and shall not contribute with such other insurance.

Notice of Removal, Ex. A at 13, 15, 19.

## II. Analysis

As noted, Plaintiff objects to those portion of the Findings and Recommendation in which the Magistrate Judge recommends this Court grant RLI's Motion for Summary Judgment, deny Plaintiff's Motion for Partial Summary Judgment as to the issue of RLI's duty to defend, and dismiss Plaintiff's claims against RLI. Specifically, Plaintiff objects to the Magistrate Judge's findings and conclusion that "horizontal exhaustion" applies to RLI's duty to defend (*i.e.*, that RLI's duty to defend is not "triggered" until "all [of Plaintiff's] primary insurance coverage is exhausted") and that RLI's duty to defend has not been "triggered" because other insurers are defending NW Pipe completely as to all of the claims against NW Pipe.

### A. Insurance Contract Interpretation

██ Under Oregon law, courts interpret insurance policy provisions according to the analytical framework set out in *Hoffman Construction Co.* [Courts] first determine whether the policy defined the term at issue and, if it did not, [courts] look to the plain meaning of the term. *American Hardware Ins. Group*, 167 Or.App. at 248, 2 P.3d 413. If [the court] determine[s] that there are two or more plausible interpretations of the term, then we consider whether those interpretations "withstand scrutiny, *i.e.*, continue[ ] to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman Construction Co.* [*v. Fred S. James & Co.*], 313 Or. [464] at 470, 836 P.2d 703 [ (1992) ]. Only if more than one interpretation remains

reasonable after such an examination will we conclude that the policy provision is ambiguous. *Id.* If the provision is ambiguous, we construe it against the insurer as its drafter. *Id.* at 470–71, 836 P.2d 703.

*Clinical Research Inst. of S. Or., P.C. v. Kemper Ins. Co.*, 191 Or.App. 595, 599–600, 84 P.3d 147 (2004).

██ Under Oregon law, courts " 'evaluate a duty to defend claim by examining two documents: the complaint and the insurance policy.' " *Certain Underwriters at Lloyd's London and Excess Ins. Co., Ltd. v. Mass. Bonding and Ins. Co.*, 235 Or.App. 99, 116, 230 P.3d 103 (2010)(quoting *Am. Hardware Ins. Group v. West One Auto.*, 167 Or.App. 244, 247, 2 P.3d 413 (2000)).

### B. Exhaustion Requirement

██ The parties dispute the meaning of the phrase "any other underlying insurance" set out in the duty-to-defend portion of RLI's policy. Plaintiff contends that provision means RLI has a duty to defend under its umbrella policy issued to Plaintiff when the underlying coverage is exhausted for the same effective period as RLI's policy. RLI contends that provision means RLI has a duty to defend Plaintiff only after Plaintiff's underlying coverage for all possible periods has been exhausted. The Court concludes there are two plausible interpretations of the provision at issue, and, therefore, the Court must consider whether those interpretations "withstand scrutiny, *i.e.*, continue[ ] to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Clinical Research Inst. of S. Or.*, 191 Or.App. at 600, 84 P.3d 147 (quotation omitted).

It is undisputed that Oregon courts have not analyzed whether an umbrella insurer's duty to defend is triggered only after all of an insured's primary insurance is exhausted. The parties, therefore, rely on California cases.[1]

The Magistrate Judge relied on *California Insurance Company v. Oregon Insurance Guaranty Association*, No. 01–CV–514–HA, 2005 WL 627624 (D.Or. Mar. 17, 2005), when he concluded the policy at issue required horizontal exhaustion of all underlying policies before RLI's duty to defend was triggered. *California Insurance Company*, however, addressed whether an insured was required to exhaust underlying insurance before the excess or umbrella insurers' duty to indemnify was triggered rather than whether an insured was required to exhaust underlying insurance before the umbrella insurer's duty to defend was triggered.

Plaintiff relies on *Legacy Vulcan Corporation v. Transport Insurance Company*, 185 Cal.App.4th 677, 110 Cal.Rptr.3d 795 (2 Dist.2010), to support its position. In *Legacy* the defendant issued liability insurance policies to the plaintiff for several years including a policy effective from January 1, 1981, through January 1, 1982. The 1981–82 policy provided in pertinent part:

> The Company will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of
>
> A. personal injury or
>
> B. property damage or
>
> C. advertising injury
>
> to which this insurance applies, caused by an occurrence, and

> (1) With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or
>
> (2) If limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy.[2]
>
> The Company will
>
> (a) have the right and duty to defend any suit against the Insured seeking damages on account of such ... property damage ... even if any of the allegations of the suit are groundless, false or fraudulent.

*Id.*, at 682–83, 110 Cal.Rptr.3d 795 (emphasis in original). In addition, the policy provided in a separate provision that the defendant's limit of liability was the

> ultimate net loss in excess of the Insured's retained limit defined as the greater of:
>
> (a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or
>
> (b) the amount specified in Item 3. of the Limits of Liability section of the declarations because of ... property damage ... not within the terms of the coverage of the underlying insurance listed in Schedule A.

*Id.*, at 684, 110 Cal.Rptr.3d 795 (emphasis in original). The policy defined "ultimate net loss" as "the amount actually paid or payable for [the plaintiff's] liability" and

---

**1.** The parties do not dispute, and the Court agrees, that Oregon and California apply the same rules of insurance contract interpretation.

**2.** The court refers to these provisions as clause (1) and clause (2) throughout its opinion.

did not contain a definition for the term "underlying insurance," but it did include a "Schedule of Underlying Insurance" that listed several insurance policies and stated the limits of liability for each policy. *Id.*, at 684–85, 110 Cal.Rptr.3d 795. Finally, the policy provided

> Other insurance
>
> If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over the Company's limit of liability provided in this policy.

*Id.* On appeal the plaintiff contended, among other things, that

> (1) the duty to defend in clause (1) relates to the policy's umbrella coverage and extends to suits that are potentially covered under [the defendant's] policy, so [the plaintiff] need not show that a suit is actually covered in order to trigger a duty to defend; ... and (3) the duty to defend in clause (1) does not depend on the exhaustion of any underlying insurance, so principles of horizontal exhaustion are inapplicable.

*Id.*, at 688, 110 Cal.Rptr.3d 795. The court distinguished primary, excess, and umbrella coverage as follows:

> Primary insurance provides coverage immediately upon the occurrence of a loss or an event giving rise to liability, while excess insurance provides coverage only upon the exhaustion of specified primary insurance.... Umbrella insurance provides coverage for claims that are not covered by the underlying primary insurance. An umbrella insurer "drops down" to provide primary coverage in those circumstances. Thus, a policy that provides both excess and umbrella insurance provides both excess and primary coverage.

*Id.* (citations omitted). The court concluded the policy at issue contained both excess and umbrella insurance, and, therefore, it provided both excess and primary coverage. *Id.*, at 689–90, 110 Cal.Rptr.3d 795. The court noted the language of clause (1) provides the defendant had a duty to defend

> any suit against [the plaintiff] seeking damages for ... "property damage not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance." *Alternatively,* the [policy] provided, in clause (2), that in the event the conditions specified in clause (1) did not exist, then [the defendant's] defense duty would not arise until "the limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy."

*Id.* (emphasis in original). In summary,

> if clause (1) did not apply to a particular claim, then, under clause (2), [the defendant's] duty to defend with respect to that claim would not be triggered until the exhaustion of the underlying insurance. If clause (1) did apply to a particular claim, however, then [the defendant's] defense duty would be triggered and clause (2) [and its exhaustion requirement] would have no application with respect to that claim.

*Id.*

The Court agrees with the general reasoning of *Legacy.* As noted, RLI's policy as to the duty to defend provides:

> With respect to any occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurances hereof or any other underlying insurance collectible by [Plaintiff], but covered by the terms and conditions of this policy ... [RLI] shall

(a) defend any suit against [Plaintiff] alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent.

Unlike in *Legacy,* the duty-to-defend provision here does not require exhaustion nor is there any provision the Court could construe as an excess-insurance provision requiring exhaustion before the duty to defend is triggered. Although the RLI policy sets out an exhaustion provision in the section of the policy relating to indemnity coverage, that provision is not repeated in the section of the policy setting out RLI's duty to defend. When construing instruments, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." Or.Rev.Stat. § 42.230. Accordingly, the Court declines to import the exhaustion requirement into the duty-to-defend provision.

### C. Duty to Defend

 As noted, courts in Oregon "evaluate a duty to defend claim by examining two documents: the complaint and the insurance policy." *Certain Underwriters at Lloyd's,* 235 Or.App. at 116, 230 P.3d 103 (quotation omitted). "In the absence of any compelling evidence of no coverage, the insurer owes a duty to defend if the injured claimant can recover under the allegations of the complaint upon any basis for which the insurer affords coverage." *Clinical Research Inst. of S. Or.,* 191 Or. App. at 599–600, 84 P.3d 147(quotation omitted).

"Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy.... Any ambiguity in the complaint with respect to whether the allegations

could be covered is resolved in favor of the insured."

*Certain Underwriters at Lloyd's,* 235 Or. App. at 116, 230 P.3d 103 (quoting *Ledford v. Gutoski,* 319 Or. 397, 399–400, 877 P.2d 80 (1994)). Accordingly, an insurer has a duty to defend if any allegations in the complaint could possibly trigger the duty to indemnify under the policy.

As noted, the policy at issue provides RLI has a duty to defend Plaintiff for "any occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurances hereof or any other underlying insurance collectible by [Plaintiff], but covered by the terms and conditions of this policy." Accordingly, under the plain language of the policy, RLI has a duty to defend Plaintiff when (1) the claim involves a covered "occurrence" as defined in the policy, (2) there is not any policy listed in the Schedule of Underlying Insurance that provides indemnity for the covered occurrence, and (3) there is not any "other underlying insurance collectable by [Plaintiff]."

The parties do not dispute for purposes of these Motions that the claim at issue involves a covered occurrence as that term is defined in the RLI policy. In addition, it is undisputed that the Schedule of Underlying Insurances referred to in the duty-to-defend provision lists only the Wausau policy, which the Court has concluded does not provide Plaintiff with coverage due to the "absolute pollution exclusion" in the Wausau policy. Accordingly, the first two conditions triggering RLI's duty to defend have been satisfied.

 The parties, however, dispute whether there is "other underlying insurance collectable by [Plaintiff]," and, as a result, RLI does not have a duty to defend. As noted, the policy does not define the phrase "underlying insurance collectible by [Plaintiff]." RLI contends Plain-

tiff's proposed interpretation that RLI has a duty to defend Plaintiff when the underlying coverage is exhausted for the same effective period as RLI's policy strains the plain meaning of the policy language and renders the phrase "effectively meaningless" because "underlying insurance covering the same effective period as the RLI policy would in the usual case be expected to appear on the policy's schedule of underlying insurance." According to RLI, therefore, horizontal exhaustion of all primary insurance triggers RLI's duty to defend as well as its duty to indemnify.

As noted, when interpreting an insurance policy, the Court must "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." *See* Or.Rev.Stat. § 42.230. The Court also must attempt to construe the phrase "any other underlying insurance" to give it meaning within the context of the policy as a whole. *See Gonzales v. Farmers Ins. Co. of Or.,* 345 Or. 382, 387, 196 P.3d 1 (2008) ("We also consider the particular context in which that term is used in the policy and the broader context of the policy as a whole.").

RLI's policy defines "other insurance" as "other valid and collectible insurance with any other carriers . . . available to [Plaintiff] covering a loss also covered by" RLI's policy. In turn, RLI's policy sets out losses covered by its policy as "property damage . . . caused by or arising out of each occurrence." RLI's policy defines an "occurrence" in pertinent part as

an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in . . . property damage . . . *during the policy period.*

Notice of Removal, Ex. A at 15 (emphasis added). Thus, the definition of a covered occurrence includes the temporal limitation to occurrences during the policy period.

Accordingly, the Court concludes the phrase "any other underlying insurance" must be interpreted within the context of RLI's policy as a whole to encompass only underlying insurance covering losses that occurred during RLI's policy period.

As Plaintiff points out, Plaintiff had primary indemnity coverage only through Wausau during the effective period of the RLI policy. The Court has concluded Wausau does not have any duty to defend or to indemnify Plaintiff due to the absolute pollution exclusion in the Wausau policy. In addition, RLI has not established any other insurer or policy has a duty to indemnify Plaintiff for the period at issue or that the property damage did not occur during the period at issue, and, therefore, the conditions triggering RLI's duty to defend have been met.

■ The Court notes RLI also contends it does not have any duty to defend Plaintiff under its policy because other insurers also are defending Plaintiff in connection with their insurance policies for the period at issue. RLI, however, confuses the duty to defend with the duty to indemnify. RLI's policy clearly defines its duty to defend in terms of an occurrence covered by underlying insurance. An occurrence is defined in terms of an event triggering indemnification rather than defense. As Plaintiff notes, an insurer under Oregon law has a duty to defend all claims if any claim is covered. *See, e.g., Timberline Equip. Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 281 Or. 639, 645, 576 P.2d 1244 (1978)("If the complaint contains some allegations of conduct or damage excluded from the policy but has other allegations which would fall within the policy coverage, the insurer has a duty to defend. The insurer is liable for the total defense costs. quotation omitted)." *See also Delta Sand & Gravel Co. v. Gen. Ins. Co.,* 111 Or.App. 347, 350, 826 P.2d 82 (1992)("a duty to

defend arises whenever the allegations of the complaint filed against the insured show that there is a possibility that the policy provides coverage for the claim made."). Accordingly, the fact that other insurers are fully defending Plaintiff does not establish the policies issued by those insurers provide underlying indemnity coverage for Plaintiff for the occurrence indemnified by RLI's policy. Whether other insurers also defend this action is not relevant to RLI's duty to defend under the terms of its policy because RLI has not established either that Wausau or any other underlying insurer must indemnify Plaintiff for the alleged property damage during RLI's policy period or that the alleged damage did not occur within the period of RLI's policy.

The Court concludes on this record that RLI has a duty to defend Plaintiff in this action under the terms of its policy unless or until RLI establishes the property damage at issue was not "caused by or arising out of [an] occurrence" during the relevant policy period. Accordingly, the Court does not adopt that portion of the Findings and Recommendation in which the Magistrate Judge recommends this Court grant Defendant RLI's Motion for Summary Judgment as to RLI's duty to defend, deny Plaintiff's Motion for Partial Summary Judgment as to RLI's duty to defend, and dismiss Plaintiff's claims against RLI.

### CONCLUSION

The Court **ADOPTS** that portion of Magistrate Judge Papak's Findings and Recommendation (# 54) in which he recommends the Court grant Defendant Wausau's Motion (# 23) for Partial Summary Judgment, deny the portion of Plaintiff's Motion (# 32) for Partial Summary Judgment as to Defendant Wausau's duty to defend, declare Wausau does not have a duty to defend or to indemnify Plaintiff under the 1985–86 insurance policy, and

dismiss all of Plaintiff's claims against Wausau.

The Court **DOES NOT ADOPT** that portion of the Findings and Recommendation in which the Magistrate Judge recommends the Court grant Defendant RLI's Motion (# 28) for Summary Judgment as to RLI's duty to defend, deny the portion of Plaintiff's Motion (# 32) for Partial Summary Judgment as to RLI's duty to defend, and dismiss Plaintiff's claims against RLI.

In summary, the Court **GRANTS** Defendant Wausau's Motion (# 23) for Partial Summary Judgment, **DISMISSES** all of Plaintiff's claims against Wausau, **DENIES** RLI's Motion (# 28) for Summary Judgment as to RLI's duty to defend, **GRANTS** Plaintiff's Motion (# 32) for Partial Summary Judgment as to RLI's duty to defend, and **DENIES** Plaintiff's Motion (# 32) for Partial Summary Judgment as to Wausau's duty to defend.

IT IS SO ORDERED.

### FINDINGS AND RECOMMENDATION

PAPAK, United States Magistrate Judge:

Plaintiff Northwest Pipe Company ("NW Pipe") filed this declaratory judgment and breach of contract action in Multnomah County Circuit Court against defendants RLI Insurance. Company ("RLI") and Employers Insurance of Wausau ("Wausau") on July 14, 2009. Through this action, NW Pipe seeks declarations that each of Wausau and RLI is obligated to undertake NW Pipe's defense in connection with superfund-related claims brought against it by the Environmental Protection Agency (the "EPA") and the Oregon Department of Environmental Quality (the "DEQ"), as well as damages for costs incurred in investigating and defending those claims. Defendant Wausau removed the action to this court on September 22, 2009, on diversity grounds. On September

29, 2009, Wausau filed a counterclaim against NW Pipe, seeking this court's declarations that Wausau has no duty to defend and no obligation to indemnify NW Pipe in connection with the insurance policy between Wausau and NW Pipe that is the subject of NW Pipe's claims against Wausau, as well as this court's declarations that Wausau has no duty to defend and no obligation to indemnify NW Pipe in connection with two other insurance policies between Wausau and NW Pipe, as to which Wausau is currently contributing to NW Pipe's defense,

Now before the court are Wausau's motion (# 23) for partial summary judgment, RLI's motion (# 28) for summary judgment, styled as a motion for partial summary judgment, and NW Pipe's cross motion (# 32) for partial summary judgment. Wausau seeks summary adjudication of NW Pipe's claims against it and of its own claims for declaratory relief in connection with the insurance policy that is the subject of NW Pipe's claims against Wausau, but does not move for judgment as to its claims for declaratory relief in connection with its two other insurance policies. RLI seeks summary adjudication of NW Pipe's claims against it in their entirety. NW Pipe seeks summary adjudication of its claims for declaratory relief, but does not move for judgment as to its claims for damages.

I have heard oral argument on the parties' motions, and considered the parties' briefs and all of the evidence in the record. For the reasons set forth below, Wausau's motion should be granted, RLI's motion should be granted, and NW Pipe's motion should be denied.

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed.R.Civ.P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir.2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See id.*

## FACTS

### I. Parties

Northwest Pipe Company (formerly known as Northwest Pipe & Casing Com-

pany) is an Oregon corporation with its principal place of business in Vancouver, Washington. At all material times, NW Pipe owned and operated a facility (the "Portland Facility") near the Willamette River in North Portland, located at 12005 N. Burgard Road.

Employers Insurance of Wausau is a Wisconsin corporation with its principal place of business in Wisconsin. Wausau is in the business of providing liability insurance. Wausau issued three insurance policies to NW Pipe, each with a $500,000 coverage limit, one covering the period from July 8, 1983, through July 8, 1984, one covering the period from July 8, 1984, through July 8, 1985, and one covering the period from July 8, 1985, through July 8, 1986. Wausau has undertaken to defend NW Pipe against the superfund claims in connection with the policies covering the period from July 8, 1983, through July 8, 1984, and the period from July 8, 1984, through July 8, 1985, but has not undertaken NW Pipe's defense in connection with the policy covering the period from July 8, 1985, through July 8, 1986.

RLI Insurance Company ("RLI") is an Illinois corporation with its principal place of business in Illinois. RLI is in the business of providing liability insurance. RLI issued NW Pipe a so-called "umbrella" liability insurance policy with a $1,000,000 coverage limit, covering the period from July 8, 1985, through February 19, 1986.[1]

## II. Policies

### A. Wausau's Policies

Wausau's policies covering the period from July 8, 1983, through July 8, 1984, and the period from July 8, 1984, through July 8, 1985, contain a coverage exclusion for any damage caused by pollution *other*

than "sudden and accidental" pollution. That is, the policies cover damage caused by sudden and accidental release of pollutants, and do not cover damage caused by any other pollutants. Wausau has undertaken to defend the actions against NW Pipe in connection with each of these two policies subject to a reservation of rights, and is currently defending NW Pipe in those actions under these policies.

By contrast, Wausau's policy covering the period from July 8, 1985, through July 8, 1986 (Wausau's "1985–1986 policy"), as amended, contains a so-called "absolute" pollution exclusion, excluding from coverage all damage caused by pollutants, applicable as follows:

(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

 (a) at or from premises owned, rented or occupied by the named insured;

 (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

 (c) which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

 (d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:

---

1. The policy was originally issued for a period of one year, but was canceled effective February 19, 1986.

(i) if the pollutants are brought on or to the site or location in connection with such operations; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The absolute pollution exclusion was added to the 1985–1986 policy by Endorsement No. 8 on August 6, 1985, approximately one month into the effective period of the policy. By its express terms, Endorsement No. 8 was intended to apply retroactively to the entire effective period of the policy.

### B. RLI's Policy

RLI's policy, covering the period from July 8, 1985, through February 19, 1986 (the "RLI policy"), provides insurance coverage in the event of property damage, among other losses. The policy contains a provision (the "underlying-insurance provision") expressly providing that RLI must undertake NW Pipe's defense in the event of a covered loss as to which no coverage exists under any insurance policy "underlying" the RLI policy:

> With respect to any occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance hereof or any other underlying insurance collectible by the Assured, but covered by the terms and conditions of this policy except for the amount of Retained Limit specified in the Declarations, the Company shall

> (a) defend any suit against the Assured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . .

The Schedule of Underlying Insurance specifically lists Wausau's 1985–1986 policy as an underlying policy.

The RLI policy contains a further provision (the "other-insurance provision") providing that coverage under the RLI policy does not arise until coverage under all other applicable policies is exhausted, other than coverage under policies expressly excess to the RLI policy:

> If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

### III. History of Coverage Dispute

On November 19, 1999, the Oregon Department of Environmental Quality sent NW Pipe a letter indicating that the Portland Facility was a "high priority" location for assessment and testing in connection with the investigation of the significant contamination of the Portland Harbor superfund site. On December 8, 2000, the Environmental Protection Agency sent NW Pipe a letter indicating that NW Pipe had been identified as a potentially responsible party in connection with the contamination of the Portland Harbor superfund site. As a responsible party, NW Pipe was required to conduct an investigation of

the contamination at the Portland Facility and to defend itself against EPA and DEQ claims against it.

On January 16, 2002, NW Pipe tendered the defense of the EPA and DEQ claims to Wausau and to RLI, among at least four other insurers. Third-party Mission Insurance Company apparently undertook NW Pipe's defense in connection with four separate insurance policies, third-party Highlands Insurance Company apparently undertook NW Pipe's defense in connection with three separate insurance policies, third-party Aetna Insurance Company apparently undertook NW Pipe's defense in connection with two separate insurance policies, and third-party Century Indemnity Company apparently undertook NW Pipe's defense in connection with its insurance policy with the plaintiff. In addition, Wausau undertook NW Pipe's defense in connection with two of its three policies with NW Pipe, as noted above. However, Wausau declined to defend NW Pipe in connection with the 1985–1986 policy on the ground that coverage was excluded under the absolute pollution exclusion of that policy, and RLI declined to undertake NW Pipe's defense on the ground that its duty to defend was not triggered until NW Pipe had exhausted all other applicable insurance coverage, This action followed.

## ANALYSIS

It is NW Pipe's position that, because the RLI policy is expressly excess as to Wausau's 1985–1986 policy, necessarily either Wausau erred in refusing to undertake NW Pipe's defense under its 1985–1986 policy or RLI erred in refusing to undertake NW Pipe's defense under its umbrella policy. Wausau does not dispute NW Pipe's position, but contends that coverage under its 1985–1986 policy is clearly excluded pursuant to that policy's absolute pollution exclusion, and on that basis argues that it properly refused to undertake NW Pipe's defense under that policy.

RLI, by contrast, does dispute NW Pipe's position, arguing that while its policy is concededly expressly excess as to Wausau's 1985–1986 policy, under the plain language of its policy the duty to defend does not arise until all other applicable coverage is exhausted, including coverage under other policies. On that basis, RLI argues that its refusal to undertake Wausau's defense was proper. The three motions before the court therefore raise only two legal issues: whether Wausau's refusal was proper under its 1985–1986 policy, and whether RLI's refusal was proper under its umbrella policy.

In Oregon, it is well settled that an insurer's "duty to defend arises whenever the allegations of a complaint filed against the insured show that there is a possibility that the policy provides coverage for the claim made." *Delta Sand & Gravel Co. v. General Ins. Co.*, 111 Or.App. 347, 350, 826 P.2d 82 (Or.Ct.App.1992), *citing Ferguson v. Birmingham Fire Ins.*, 254 Or. 496, 507, 460 P.2d 342 (1969). The duty to defend is determined strictly by reference to the facts alleged in the complaint, and arises where those facts "provide a basis for recovery that could be covered by the policy." *Ledford v. Gutoski*, 319 Or. 397, 399–400, 877 P.2d 80 (1994).

Oregon law provides that the first rule of contract construction is to "ascertain the intention of the parties" through analysis of the provisions of the contract. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469, 836 P.2d 703 (1992) (quotation omitted); *see also* Or.Rev.Stat. § 742.016. When the parties assert competing plausible interpretations of a term in the policy, the court must engage in a series of analytical steps. *See id.*, at 470, 836 P.2d 703. If the policy does not define the phrase in question, the court must consider whether the phrase has a plain meaning. *See Holloway v. Republic Indemnity Co. of Am.*,

341 Or. 642, 649, 147 P.3d 329 (2006). If, however, the phrase in question has more than one plausible interpretation, the court must then determine whether both interpretations remain reasonable in light of the phrase's particular context and the broader context of the policy as a whole. *See id.,* at 333–334. If that contextual analysis yields two or more reasonable interpretations, then the court should construe the remaining ambiguity against the drafter. *See id.,* at 334.

Where the terms of an insurance policy are unambiguous, the contract should be enforced according to its terms. *See Garrett v. State Farm Mutual Ins. Co.,* 112 Or.App. 539, 543–544, 829 P.2d 713 (Or.Ct. App.1992). The courts will not apply a strained meaning to unambiguous language to create an ambiguity where none exists. *See Mortgage Bancorporation v. New Hampshire Ins. Co.,* 67 Or.App. 261, 264, 677 P.2d 726 (Or.Ct.App.1984). In particular, the courts may not find coverage where the unambiguous terms of a contract exclude coverage. *See Allstate Ins. Co. v. State Farm Mutual Auto. Ins. Co.,* 67 Or.App. 623, 627, 679 P.2d 879 (Or.Ct.App.1984).

## I. Coverage under Wausau's 1985–1986 Policy

■ The EPA and DEQ claims at issue here allege NW Pipe's potential liability in connection with a release or releases of hazardous substances, pollutants, and contaminants at the Portland Facility. The EPA and DEQ have demanded that NW Pipe monitor contaminant levels at the site and control the source of the contaminants. The parties do not dispute the nature of the EPA and DEQ claims and demands at issue here.

Wausau's 1985–1986 policy expressly excludes from coverage losses due to "property damage arising out of the ... release ... of ... pollutants ... at or from prem-

ises owned, rented, or occupied by [NW Pipe]" as well as losses "arising out of any governmental direction or request that [NW Pipe] test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants." Under the plain language each of these two exclusionary provisions, coverage for NW Pipe's losses is clearly excluded. Moreover, courts construing similar or identical exclusions have routinely reached the same conclusion. *See, e.g., Martin v. State Farm Fire & Cas. Co.,* 146 Or.App. 270, 275–276, 932 P.2d 1207 (Or.Ct.App.1997) (affirming trial court's finding that absolute pollution exclusion foreclosed insurer's duty to defend); *see also Ind. Lumbermens Mut. Ins. Co. v. W. Or. Wood Prods.,* 268 F.3d 639, 644–645 (9th Cir.2001); *Larsen Oil Co. v. Federated Serv. Ins. Co.,* 859 F.Supp. 434, 437 (D.Or.1994), *citing Great Northern Ins. Co. v. Benjamin Franklin Federal Savings and Loan Ass'n,* 793 F.Supp. 259 (D.Or.1990); *Hydro Systems v. Continental Ins. Co.,* 717 F.Supp. 700 (C.D.Cal.1989). Because the claims against NW Pipe are clearly excluded from coverage, Wausau was under no obligation to undertake NW Pipe's defense under its 1985–1986 Policy.

NW Pipe does not seriously dispute this conclusion, and relies chiefly on its argument that if coverage is excluded under Wausau's 1985–1986 policy, there must necessarily be coverage under RLI's umbrella policy. However, NW Pipe does advance the argument that there may be coverage under the 1985–1986 policy based on the fact that the absolute pollution exclusion was added to the 1985–1986 policy by Endorsement No. 8 on August 6, 1985. The plain language of Endorsement No. 8 indicates that its terms apply retroactively to the entire effective period of the policy, but NW Pipe suggests that the retroactivity provision may be ineffective. NW Pipe

offers no authority in support of its argument.

Oregon law contains no provision to prevent the parties to an insurance contract from modifying coverage retroactively. Moreover, it appears that NW Pipe consented to Endorsement No. 8 at the time it issued, or, at a minimum, made no timely objection to it. In consequence, I find no merit to the argument that the absolute pollution exclusion applies with respect to only a portion of the effective period of the 1985–1986 policy The absolute pollution exclusion is enforceable according to its own terms as to the entire effective period of the policy.

For the foregoing reasons, Wausau's motion for partial summary judgment should be granted, and NW Pipe's motion for partial summary judgment should be denied as to defendant Wausau.

## II. Coverage under RLI's Umbrella Policy

NW Pipe's defense is ongoing, and has been undertaken by several insurers. Some or all of these insurers have undertaken NW Pipe's defense subject to a reservation of rights, but all defending insurers are defending NW Pipe completely; that is, all defending insurers are defending NW Pipe as to *all* of the claims against it, including those claims, if any, relating solely to damage caused during the effective period of Wausau's 1985–1986 policy. The parties do not dispute the foregoing facts.

RLI argues that its duty to contribute to NW Pipe's defense is not triggered until coverage is exhausted under all defending insurers' policies. RLI's argument is premised on a concept sometimes referred to as "horizontal exhaustion," according to which, in cases of continuing loss or continuously triggered property damage, all primary insurance coverage must be exhaust-ed before an excess insurer must "drop down" to defend an insured.

RLI's argument is correct. "Where an insured is covered by both a primary policy and an excess policy, the general rule is that the excess liability carrier is not obligated to participate in the defense until the primary policy limits are exhausted." 14 Couch on Insurance, § 200:41 (3d ed. 2007). Moreover, RLI's policy expressly provides that the insurance it affords "shall be in excess of and shall not contribute to" primary insurance coverage "[i]f other valid and collectible insurance with any other insurer is available" to NW Pipe. Here, it is clear from the fact that other insurers have undertaken NW Pipe's complete defense that "other ... insurance ... is available" in connection with undertaking NW Pipe's defense. Therefore, under the plain language of the other-insurance provision of RLI's umbrella policy, RLI's coverage does not drop down and trigger RLI's duty to defend until such time as all primary insurance coverage is exhausted.

NW Pipe argues that the underlying-insurance provision of the RLI policy requires a different result. According to that provision, any loss within the coverage terms of the RLI policy that is *not* "covered by the underlying policies listed in the Schedule of Underlying Insurance hereof [*i.e.*, Wausau's 1985–1986 policy] or any other underlying insurance collectible by [NW Pipe]" triggers RLI's duty to defend. NW Pipe argues that this provision requires only so-called "vertical exhaustion" before RLI's obligation to defend is triggered. NW Pipe further argues that the vertical exhaustion requirement is satisfied here, noting that the EPA and DEQ claims against NW Pipe allege property damage, and are therefore within the coverage terms of the RLI policy, and that, as discussed above,

the claims are not covered by Wausau's 1985–1986 policy.

NW Pipe's argument that the underlying-insurance provision requires only vertical exhaustion before the excess insurer's duty to defend drops down is at odds with the plain language of the provision. The effect of the provision's "or any other underlying insurance" clause can only be to require horizontal exhaustion before the duty to defend is triggered. That is, the duty to defend does not drop down under the plain language of the underlying-insurance provision until coverage under both scheduled *and* unscheduled underlying policies is exhausted. Moreover, to interpret the word "underlying" in the phrase "any other underlying insurance" as meaning *both* "primary relative to coverage under the RLI policy" *and* "effective as to the same range of dates as the RLI policy," as NW Pipe's argument would require, would not merely strain the plain meaning of the policy language to an unacceptable degree but would also render the "or any other underlying insurance" clause effectively meaningless, since underlying insurance covering the same effective period as the RLI policy would in the usual case be expected to appear on the policy's schedule of underlying insurance.

Although it does not appear that the Oregon courts have had occasion directly to address the question raised here by the parties' arguments, support for the foregoing conclusion may be found in *Cal. Ins. Co. v. Or. Insurance Guar. Ass'n,* Case No. 01–514–HA, 2005 WL 627624, 2005 U.S. Dist. LEXIS 4621 (D.Or. March 17, 2005). In that case, Judge Haggerty of this district applied Oregon law to interpret provisions almost identical to those at issue here as requiring horizontal exhaustion before the excess insurer's duty to defend could trigger. *See id.* at *3–4, 2005 U.S. Dist. LEXIS 4621 at *10–12, *see also Cal. Ins. Co. v. Stimson Lumber Co.,* 325 Fed.Appx. 496, 500 (9th Cir.2009) (affirming Judge Haggerty's decision as to the horizontal exclusion requirement and reversing and remanding in part, on other grounds) (unpublished disposition).

Because RLI's duty to defend does not trigger until after all applicable primary insurance coverage is exhausted, and because NW Pipe has not yet exhausted all applicable primary insurance coverage, RLI's motion for summary judgment should be granted, and NW Pipe's motion for partial summary judgment should be denied as to defendant RLI.

## CONCLUSION

For the reasons set forth above, Wausau's motion (# 23) for partial summary judgment should be granted, RLI's motion (# 28) for summary judgment should be granted, NW Pipe's cross motion (# 32) for partial summary judgment should be denied, NW Pipe's claims against Wausau and RLI should be dismissed in their entirety, and the court should declare that Wausau has no duty to defend or indemnify NW Pipe under the 1985–1986 policy. I make no recommendation as to Wausau's third and fourth counterclaims against NW Pipe at this stage of these proceedings.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge, Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections, When the response is due or filed, whichever date is

earlier, the Findings and Recommendation will go under advisement.

April 27, 2010.