STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WYMAN EDWARD BROWN,
*Defendant-Appellant.*

Yamhill County Circuit Court
MI100367; A150706

333 P3d 1153

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Wollheim, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant, who entered a conditional plea of guilty, ORS 135.335(3),[1] for driving under the influence of intoxicants (DUII), ORS 813.010, appeals the resulting judgment, assigning error to the trial court's denial of his motion to suppress evidence of his intoxication obtained as a result of a warrantless search of his bedroom. Defendant contends that the search was unlawful under Article I, section 9, of the Oregon Constitution,[2] and the Fourth Amendment to the United States Constitution.[3] For the reasons explained below, we conclude that defendant's appellate contentions are unpreserved. Accordingly, we affirm.

We review the trial court's denial of defendant's motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In doing so, we are bound by the trial court's express and implicit factual findings if there is constitutionally sufficient evidence in the record to support them. *Id.* We state the facts in accordance with that standard.

On May 8, 2010, in the early morning, McMinnville Police Officers Zemlicka and Desmond responded to a report that a vehicle was in a roadside ditch outside of a residential area. The officers arrived at the scene at 4:22 a.m. and observed an unoccupied green Ford Taurus in a ditch, with footprints in the mud around the car and muddy handprints on the outside of the car. After retrieving the car's registration information, Zemlicka called the registered owner. She reported that she had given the car to defendant, who, Zemlicka discovered, lived a few blocks from the scene. At

---

[1] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

[2] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[3] The Fourth Amendment provides, in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

that point in the investigation, the officers did not know what had caused the crash.

The officers went to defendant's residence—a mobile home that he occupied with his mother and grandmother[4]— and knocked on the front door at around 5:00 a.m. When defendant's grandmother[5] answered the door, Zemlicka explained to her that the officers needed to speak with defendant and asked if she knew where he was. She replied that defendant was in his bedroom. Zemlicka asked if the officers could "come inside and speak with [him.]" She allowed the officers into the residence, led them to defendant's bedroom, and opened the door. As they stood at the threshold of the bedroom, the officers smelled an "overwhelming odor of alcohol coming from inside the bedroom," and they saw defendant asleep on his bed with mud on his hands and clothes.

The officers entered the bedroom, and Zemlicka spoke to defendant, who awoke and sat up in bed. Zemlicka stood next to defendant and asked him what he had been doing earlier that evening. Defendant admitted that he had consumed alcohol and crashed the car into the ditch. Zemlicka administered a horizontal gaze nystagmus test to defendant in his bedroom. Shortly thereafter, defendant agreed to accompany Zemlicka outside and undergo other field sobriety tests. Those tests indicated that defendant was intoxicated. He was arrested and subsequently charged with DUII.

Defendant filed a pretrial motion to suppress all evidence obtained as a result of the search of his residence and bedroom because, defendant argued, the search was not supported by a valid exception to the warrant requirement. Specifically, defendant argued that "[t]he officers entered the residence and defendant's bedroom without exigent purpose or valid consent."

In opposing defendant's motion to suppress, the state's primary contention was that grandmother had consented to a search of the residence and defendant's bedroom.

---

[4] Defendant was 16 years old at the time of the crash.

[5] The record is unclear as to whether the woman who answered the door was defendant's grandmother or mother. Because that distinction is immaterial to our analysis, for ease of reading, we refer to the woman who answered the door as defendant's grandmother.

The state argued, in the alternative, that the state had proved that exigent circumstances existed, in that both officers testified that alcohol dissipates and that they would have been delayed in questioning defendant had they attempted to obtain a warrant.

With respect to the purported "probable-cause-plus-exigency" exception, defendant remonstrated that, at the time that the officers entered the residence, they did not have probable cause to believe that defendant had consumed alcohol and operated a vehicle while impaired—and, thus, the state had failed to establish the probable-cause component of that exception to the warrant requirement. In so arguing, defendant focused on the officers' observations prior to the point at which they entered his residence; defendant did not assert that the officers lacked probable cause for DUII when, standing at the threshold of his bedroom, the officers observed the strong smell of alcohol and the mud. Defendant did not dispute that, if there was probable cause to enter his bedroom, the circumstances were legally sufficient to establish a requisite exigency.

With respect to consent, defendant contended that the state had failed to prove that grandmother had actual or apparent authority to consent to a search of the residence, generally, and defendant's bedroom, specifically. Defendant did not contend that grandmother's opening the bedroom door constituted a search.

The trial court denied defendant's motion to suppress. In so ruling, the court reasoned:

"The person that opened—answered the door, opened the door, allowed the parties to come into the house. She was not ordered to allow them to come in. She consented to their coming in after being asked if they could come in, and took them to the defendant's room and opened the defendant's door.

"Officer Desmond stated there was an overwhelming odor of alcohol coming out of the room; and he saw that there was mud on the defendant's hands, consistent with the person that would have been putting handprints on the car.

"*At that point in time*, they had not only reasonable suspicion to believe that the defendant had committed [DUII], they also had probable cause for that traffic crime[.] * * *

"I agree that there was no reasonable suspicion or probable cause to believe that an emergency occurred that would give an exigency *to enter the house* without a warrant; but there was no requirement for that, as the person with apparent authority[6] to give the consent gave the consent for them to enter and there was no unlawful police access to the house. The police observed the evidence of a crime that had been committed, and they observed that while they were in a place lawful to observe it, and they were, therefore, authorized to continue the investigation * * *."

(Emphases added.)

The preceding excerpt of the trial court's reasoning demonstrates that the court based its denial of defendant's motion to suppress on both consent and exigency. That is, when the officers arrived at the residence, they did not have probable cause for an intoxication-related offense; thus, probable cause plus exigency was inapposite with respect to entering the residence without a warrant. Instead, the court determined that grandmother consented to the officers entering the residence, and that she opened defendant's bedroom door of her own volition, and not at the officers' suggestion or instruction. At that point, the officers' vantage point permitted them to make "plain-view" observations that supported probable cause for DUII and, implicitly, the requisite exigency to cross the threshold into defendant's bedroom.

---

[6] On appeal, defendant does not dispute that grandmother had actual authority to consent to the officers entering the residence. As we noted in *State v. Ready*, 148 Or App 149, 154, 939 P2d 117, *rev den*, 326 Or 68 (1997), in contrast to the Fourth Amendment, which requires that the state establish that the person giving consent had apparent authority to do so, Article I, section 9, requires *actual* authority to give consent. *Id.* Although, the trial court initially appears to have applied only the federal standard, it later observed that "[t]here was no police authority exerted, other than being present in the home with the consent of the person authorized to give it." Accordingly, the court found that grandmother was actually authorized to consent to the officers entering the residence, and defendant does not dispute that finding.

Defendant entered a conditional guilty plea and appealed the denial of his motion to suppress. In his opening brief on appeal, defendant's sole contention is that the search of defendant's bedroom was unlawful because there was insufficient evidence to establish that grandmother had authority to consent to the search. In so arguing, defendant first contends that the officers' request to "come inside and speak with [defendant]" extended to grandmother's opening defendant's bedroom door and, therefore, the opening of the door constituted a search. Defendant argues, alternatively, that, even if opening the bedroom door was not a search, the officers crossing the threshold into defendant's bedroom was an unlawful search.

The state responds that defendant's argument regarding the opening of his bedroom door is unpreserved. With respect to the officers entering defendant's bedroom, the state asserts that search was supported by probable cause and exigent circumstances—*viz.*, the natural dissipation of evidence of intoxication.

In his reply brief, defendant does not respond to the state's nonpreservation argument. Instead, defendant argues, for the first time, that the "near *per se*" exigency that the Supreme Court identified in *State v. Machuca*, 347 Or 644, 657, 227 P3d 729 (2010), does not justify warrantless residential entries.[7] As support for that argument, defendant invokes, *inter alia*, two of this court's decisions, *State v. Roberts*, 75 Or App 292, 706 P2d 564 (1985), and *State v. Kruse*, 220 Or App 38, 184 P3d 1182 (2008), in which we held that, with respect to warrantless residential searches aimed at obtaining evidence of DUII, to support an exigency exception to the general warrant requirement, the state must prove that the amount of time that it would take to obtain a warrant would result in material destruction of evidence of intoxication. *Roberts*, 75 Or App at 296 (so holding); *Kruse*, 220 Or App at 42 (same).

---

[7] In *Machuca*, the court held:

"[W]hen probable cause to arrest for a crime involving the blood alcohol content of the suspect is combined with the undisputed evanescent nature of alcohol in the blood, those facts are a sufficient basis to conclude that a warrant could not have been obtained without sacrificing that evidence."

347 Or at 656.

In his reply brief, defendant also asserts that the warrantless entry violated the Fourth Amendment, invoking *Missouri v. McNeely*, ___ US ___, 133 S Ct 1552, 1563, 185 L Ed 2d 696 (2013), in which the Supreme Court held that, "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, * * * it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." Defendant asserts, *inter alia*, that the exigency exception identified in *McNeely* applies only to evidence of blood alcohol content—and not other evidence of intoxication such as the results of field sobriety tests—and that, in any event, in this case, the state failed to establish that the officers would face any "unusual delay in securing a warrant," *id.* at ___, 133 S Ct at 1567, such that evidence of defendant's intoxication would dissipate in the time it would take to obtain a warrant.

For the reasons that follow, we conclude that defendant's appellate contentions are not preserved for our review.[8] *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.").

First, defendant failed to preserve his present argument that grandmother's opening his bedroom door (which yielded the "plain-view" observations that established probable cause for DUII)[9] constituted an unlawful search. Specifically, at the pretrial hearing on his motion to suppress, defendant argued that the officers did not have probable cause for DUII when they entered the residence without a warrant, and he further argued that the state failed to prove that grandmother had actual authority to consent

---

[8] Defendant does not assert that the trial court plainly erred in denying his motion to suppress.

[9] Defendant did not contend before the trial court that the officers lacked probable cause for DUII after grandmother opened the bedroom door and the officers observed the overwhelming scent of alcohol and mud on defendant's hands and clothes; nor does defendant so argue on appeal.

to a search of defendant's bedroom. However, defendant did not contend that grandmother's opening of the bedroom door in itself constituted a search—and, particularly, defendant did not contend that grandmother opened his bedroom door in response to any request or direction by the officers.[10] Accordingly, we agree with the state that that argument is unpreserved.

Second, defendant did not preserve his present contention that *Machuca*'s dissipation-exigency analysis is inapplicable to warrantless entries into residences, or private areas within residences, and that the record here was insufficient to establish the requisite exigency under *Brown* and *Kruse*. As noted, defendant did not raise that argument until his reply brief and, as we have previously held, a theory advanced in a reply brief "simply comes too late." *Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 608-09, 84 P3d 147 (2004) (citing *Barns v. City of Eugene*, 183 Or App 471, 476 n 5, 52 P3d 1094 (2002)) (declining to address theory in the reply brief because the plaintiffs "did not raise [that] claim either before the trial court or in their opening brief"); *Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 237 n 20, 12 P3d 507 (2000) (noting that the plaintiff was advancing "a different basis in its reply brief as to why the trial court erred" and that the "new argument comes too late"). The same analysis and result pertains to defendant's contention that the search violated the Fourth Amendment. Accordingly, because none of defendant's appellate contentions are preserved, we affirm.

Affirmed.

---

[10] For example, defendant did not assert in the trial court that the officers' request to "come inside and speak with [defendant]" could reasonably be understood to involve an implicit request that she open his bedroom door. Because the matter is unpreserved, we imply no view as to that matter.